Thomas A. RAUSCH, et al., Plaintiffs,

v.

BEECH AIRCRAFT CORPORATION,
et al., Defendants.

ELLIOTT FLYING SERVICE, INC., third
party plaintiff, Appellant,

v.

ELAN INDUSTRIES, INC., Third
Party Defendant,

and

American Motorists Insurance Company,
garnishee, Respondent.

No. 48402.

Supreme Court of Minnesota.

March 23, 1979.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Mary Jeanne Coyne and O. C. Adamson, II, Minneapolis, for appellant.

Lasley, Gaughan, Reid & Stich, Robert T. Stich, Minneapolis, for respondent.

Heard before SHERAN, C. J., YETKA and SCOTT, JJ., and considered and decided by the court en banc.

SHERAN, Chief Justice.

This is an appeal by Elliott Flying Service, Inc. ("Elliott") from the dismissal of its supplemental complaint in a garnishment proceeding against American Motorists Insurance Company ("AMI"), insurer for Elan Industries, Inc. ("Elan"). The district court construed an exclusionary clause in AMI's policy such that Elan's liability to Elliott was not covered. We affirm.

On June 28, 1973, Elliott leased an airplane to Elan. The plane crashed on November 21, 1973, and four separate personal injury lawsuits were instituted. Each named Elliott as a defendant. The leased agreement required Elan to defend Elliott, but Elan refused and Elliott incurred $61,000 in expenses successfully defending itself. A district court judge ruled that Elliott was entitled to be indemnified by Elan for this amount.

This earlier ruling led to the phase of the proceedings being appealed here. Elliott garnished AMI, Elan's insurer, the complaint was dismissed by the district court, and Elliott brought this appeal.

The policy issued by AMI to Elan is a comprehensive catastrophe liability policy customarily called an "umbrella" policy. The coverage is as follows:

"I. Coverage

"The company agrees to indemnify the insured for all sums which the insured shall become obligated to pay as damages, direct or consequential, and expenses, all as hereinafter defined as included within the term ultimate net loss, by reason of liability

"(a) imposed upon the insured by law, or

"(b) assumed by the named insured, or by any officer, director, stockholder or employee thereof while acting within the scope of his duties as such, under any contract or agreement,

"because of personal injury, property damage or advertising liability caused by or arising out of an occurrence which takes place during the policy period anywhere in the world."

This coverage is limited by an express exclusion which the district court held applied:

"This policy does not apply:

   *   *   *   *   *   *

"(c) to liability arising out of the ownership, maintenance, operation, use, loading or unloading of

"(1) aircraft owned by or chartered without crew by or on behalf of the named insured * * *."

This exclusion is amended by a "follow form endorsement" as follows:

"In consideration of the premium charged, it is agreed that exclusion (c)(1) is amended to read as follows:

" 'It is agreed that except insofar as coverage is available to the Insured in the underlying insurance as set forth in Schedule of Underlying Insurance, this Policy shall not apply:

" '(c) to liability arising out of the ownership, maintenance, operation, use, loading or unloading of

" '(1) aircraft owned by or chartered without crew by or on behalf of the named insured.'

"It is further agreed that the limits of underlying insurance shown on the Schedule of Underlying Insurance to which this endorsement applies, shall be applicable irrespective of any limitation in the insuring agreements, exclusions, definitions or conditions of such underlying insurance."

A "follow form endorsement" is designed to "track" or provide the same coverage as a separate underlying policy. In this case the underlying insurance referred to by the above amendment to exclusion (c)(1) is an aircraft policy issued by Insurance Company of North America ("INA"). The parties are in agreement that the underlying INA aircraft policy covers tort but not contract liability arising out of use of an aircraft.

The question for decision is whether the policy issued to Elan by AMI covered Elan's liability for Elliott's legal fees. If so, the dismissal of Elliott's garnishment complaint would have been incorrect. The agreement by the parties with respect to the underlying INA policy is significant: if the INA policy does not cover contractual liability such as Elan's, then the follow form endorsement, which adds coverage under the AMI policy only to the extent of the underlying INA policy, is irrelevant. Since the INA policy does not cover Elan's liability, AMI does only if so provided somewhere in its policy besides the follow form endorsement. There is no dispute that the coverage section of the AMI policy covers Elliott's legal fees. The narrow issue before us, then, is whether the unamended exclusion (c)(1) excludes this liability. In short, did Elan's liability for Elliott's legal fees "arise out of" the use of an aircraft?

As we understand them, the positions of the parties on this question are relatively simple: AMI asserts that Elan's liability to Elliott arose out of the use of an aircraft and is therefore not covered by the policy; Elliott argues that Elan's liability arose not from use of an aircraft but from the lease contract. As Elliott asserts in its brief, "Elan's obligation, however, is *not* a liability arising out of the ownership, maintenance or use of an airplane. It is an obligation *arising solely out of Elan's contractual undertaking* * * *." An analysis of the "arising out of" language in light of prior decisions of this court shows the Elliott position quoted above to be incorrect.

The most extensive discussion of the phrase is found in *Associated Independent Dealers, Inc. v. Mutual Service Insurance Companies,* 304 Minn. 179, 229 N.W.2d 516 (1975). There the court held that a fire accidentally started by an acetylene torch attached to portable oxygen tanks in the back of a van did not arise out of the use of the van. The court stated:

"1. The question of whether a loss is sufficiently related to the ownership, maintenance, or use of an insured vehicle has been the subject of frequent judicial interpretation. In general terms, it has been established that such relationship need not be a proximate cause in the strict legal sense. Rather, it is sufficient to establish that the injury or loss 'was a natural and reasonable incident or consequence of the use of the [insured] vehicle.' It has been said that the causal connection must be 'reasonably apparent,' and that 'the mere fact that the use of the vehicle preceded the harm which was later sustained is not sufficient to bring such harm within the coverage of the policy.' It has also been held that the policy term 'arising out of' means 'originating from,' or 'having its origin in,' 'growing out of,' or 'flowing from.' In any event, each case presenting such a question must, to a great degree, turn on the particular facts presented." 304 Minn. 181–182, 229 N.W.2d 518.

The *A. I. D.* analysis has been adhered to by this court in *Engeldinger v. State Automobile and Casualty Underwriters,* 306 Minn. 202, 236 N.W.2d 596 (1975) (death did not arise out of the use of an automobile where "automobile was a mere instrument, receptacle or situs of the primary negligence of the insured") and *Holm v. Mutual Service Casualty Insurance Company,* 261 N.W.2d 598 (Minn.1977) (injuries did not arise out of the use of an automobile where police car served only to transport insured to the scene of the battery).

*A. I. D., Engeldinger* and *Holm* establish that at least a causal connection but not necessarily a relationship rising to the level of proximate cause is required for Elan's

liability to have "arisen out of" the use of an aircraft. *A. I. D.*'s use of defining phrases such as "flowed from," "grew out of" or "natural and reasonable consequence" delineates the appropriate middle ground. No more specific definition is necessary or possible; we note *A. I. D.*'s recognition that each case will turn on its particular facts.

The requisite relationship exists in this case. The three earlier cases all found the nexus between specified activity and liability insufficient because the use of the motor vehicle was at best one among the myriad of incidental causes but for which any given result would not have come about, or because it was not even an incidental cause at all. Use of the motor vehicle in these cases was in no way especially significant. In the instant case, the nexus is much stronger. Clearly the use of an airplane is a "but for" cause of Elan's liability. But it is more than that. It is the original activity out of which this entire matter arose. Far from incidental, it is fundamental to all that followed. It is true that the lease contract is also a but-for cause of the liability. Yet every effect has many causes; there may be among those any number that are quite substantial and even of which it could be said that the effect "arose out of" such cause.

Elliott, of course, argues that the contractual link in the chain of causation severs the requisite nexus in much the same way an independent intervening action breaks a chain of proximate causation. It is true that the cases we have cited do not include a contractual link. But this contract is not an independent or intervening factor at all—the promise to pay Elliott's legal fees was part of the original lease by which Elan gained use of the plane in the first place. Thus, the contractual link is inextricably interwoven with the use of the aircraft, and the liability for legal fees produced by that contract arose out of the use of the airplane.

At the hearing, in a slightly different version of the argument, it was the contention of counsel for appellant that the "lia-

bility" excluded by section (c)(1) included only *tort* liability, in keeping with the common usage of that term in insurance contracts. *Contractual* liability apparently should then require a specific reference. For instance, the coverage portion of this policy specified coverage of "liability" both (a) imposed by law, and (b) assumed under contract. Thus, it was counsel's position that Elan's contractually based liability was covered by the dual purpose coverage section of the policy but not excluded by the narrower exclusion (c)(1) referring only to "liability," i. e., tort liability. Even granting counsel the accuracy of this interpretation of the common insurance usage of the term "liability,"[1] this reasoning cannot stand. For Elan's obligation to Elliott is not in the nature of an independent contractual responsibility, as would be, e. g., the repayment of a note. Rather, it is a responsibility—yes, a liability—triggered by, inextricably related to and *arising out of* that most obvious of tortious events, the crash of an airplane. Elliott's legal fees are inseparable from this crash. Surely, had Elliott lost the personal injury action and claimed subrogation by contract from Elan, the AMI policy could not have been expected to cover. This would be the kind of tort liability obviously excluded under (c)(1). How then can it be contended that (c)(1) could exclude the damages but not the attorney's fees resulting from such a suit? Both sums are equally related to the crash. In short, it is the same causal connection which makes Elan liable for the attorney's fees in the first place that satisfies the causal requirement needed to consider the fees as *arising out of* the crash. We have been shown no reasoning to the contrary.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.

---

1. This proposition has, in fact, not been established to our satisfaction and we offer no comment on whether "liability" in insurance contracts is limited to tort liability.