INDEPENDENT SCHOOL DISTRICT NO. 697, EVELETH, MINNESOTA, Respondent,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Appellant.

No. C2-92-1625.

Court of Appeals of Minnesota.

Feb. 16, 1993.

Review Granted March 30, 1993.

Joseph J. Roby, Jr., Johnson, Killen, Thibodeau & Seiler, P.A., Duluth, MN, for appellant.

Scott C. Neff, Neff & Lager, Virginia, MN, for respondent.

Considered and decided by CRIPPEN, P.J., and KALITOWSKI and FLEMING,* JJ.

## OPINION

CRIPPEN, Judge.

St. Paul Fire and Marine Insurance Company challenges the trial court's determination that it is required to indemnify for liability and expenses resulting from two separate lawsuits against respondent School District No. 697.

## FACTS

Independent School District No. 697 holds a School Administration Liability Protection insurance policy with appellant St. Paul Fire & Marine Insurance Company. The policy provides:

> This agreement protects against losses and expenses that occur when claims or suits are brought against you or any protected person for a wrongful act based on:
> • An error or omission.
> • Negligence.
> • Breach of duty.  Or
> • Misstatement or misleading statement.

This appeal involves an interpretation and application of this provision to two unrelated claims brought by employees against the school district.

### 1.  The Stajer Claim

Alida Stajer worked as a secretary for the school district from 1982 to 1988.  During the last several years of her employment, Stajer alleged that the district engaged in a series of acts constituting intentional age discrimination in violation of the Minnesota Human Rights Act.[1]  After fil-

---

* Retired judge of the district court, serving as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1.  The district argues that Stajer's claim should be construed to also encompass allegations of unintentional or disparate impact discrimination.  Claims for "disparate impact" discrimination involve "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another." *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977).  Whether the cause of action is regarded as one for intentional or unintentional discrimination is significant.  Prior appellate decisions hold that unintentional or disparate impact discrimination should be covered by wrongful or negligent act insurance policies. *See, e.g., Solo Cup Co. v. Federal Ins. Co.,* 619 F.2d 1178 (7th Cir.1980), *cert. denied,* 449 U.S. 1033, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980); *School Dist. No. 1 v. Mission Ins. Co.,* 58 Or.App. 692, 650 P.2d 929 (1982), *pet. for rev. denied* (Or. Mar. 29, 1983).  Scrutiny of the Complaint and the background factual record indicate, however, that Stajer's cause of action is based on intentional discrimination because of her age

ing charges with the Department of Human Rights, an investigation was conducted and the department found probable cause to believe that the school district had committed discriminatory practices. A lawsuit was then commenced against the school district alleging age discrimination in violation of Minn.Stat. § 363.03, subd. 1(2)(c) (1988). The carrier denied any duty to defend or indemnify the district under the provisions of the policy. In September 1990, the district settled the dispute with Stajer and the Department of Human Rights for $18,000.

2. The Mohn Claim

Robert Mohn was employed as a principal and a teacher for the school district. In July 1988, he submitted a letter of resignation which attempted to reserve reinstatement rights under Minn.Stat. § 125.12, subd. 6b (1988). The district denied that Mohn retained any reinstatement rights and subsequently refused Mohn's request to be placed in an open administrative position.

After Mohn was twice denied reinstatement for an available administrative position, he petitioned this court for a writ of certiorari to review the district's refusal to reinstate him. The court granted the writ and decided the issue in Mohn's favor. *Mohn v. Independent Sch. Dist. No. 697*, 471 N.W.2d 723 (Minn.App.1991), *pet. for rev. denied* (Minn. Aug. 29, 1991). Carrier denied any duty to defend Mohn's appeal, and the school district bore all litigation costs and expenses.

After the district brought suit against its carrier, both the Stajer and Mohn coverage issues were presented to the trial court in cross motions for summary judgement. The court granted the district's motion and held the carrier liable for $36,615.20, which included settlement costs for the Stajer claim, and attorney fees and costs for both the Stajer and Mohn litigation. On appeal, the carrier does not dispute the amounts awarded, but contends that the trial court erred in holding the insurance company liable for any amounts arising from the Stajer and Mohn claims.

ISSUES

1. Did the trial court correctly determine that the carrier breached its duty to indemnify and defend the Stajer age discrimination claim?

2. Did the trial court correctly determine that the carrier breached its duty to defend the Mohn reinstatement claim?

ANALYSIS

I.

■ Central to resolution of the Stajer dispute is an interpretation of the insurance contract language which provides coverage for wrongful acts based on errors and omissions, negligence, breaches of duty, and misstatements or misleading statements. The interpretation and construction of an insurance policy is a question of law. *Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887 (Minn.1978).

■ Although no Minnesota case has addressed a "wrongful acts" liability policy like the one at issue here, an almost identical contract provision was the subject of a recent federal circuit court decision, *New Madrid Reorg. Sch. Dist. No. 1 v. Continental Cas. Co.*, 904 F.2d 1236 (8th Cir. 1990). The school district in *New Madrid* sought reimbursement from its carrier under a liability insurance policy for amounts paid to teachers in settlement of 42 U.S.C. § 1983 claims. The policy provision in dispute provided coverage for claims made against the school district for "wrongful acts," defined as "any actual or alleged errors or misstatement or misleading state-

---

and not on facially neutral policies or practices which had the unintended consequence of discrimination. In a critical paragraph the Complaint states: "By engaging in the acts and conduct complained of herein, Respondent acted intentionally and maliciously and was guilty of willful and wanton disregard of the rights and feelings of Stajer." In addition, the memorandum which accompanied the Department of Human Rights' finding of probable cause of discriminatory conduct states: "Investigation indicates on-going harassment and differential treatment ... is the result of age discrimination."

ment or act or omission or neglect or breach of duty." *Id.* at 1238. The federal appellate court stated:

> The insuring clause extends coverage to "wrongful acts" and nothing in the policy's definition of that term or its list of exclusions suggests that intentional wrongdoing was not meant to be covered. * * * Even if we considered the language to be ambiguous in that, for example, it is quite general, we would still conclude that there is coverage because under Missouri law it is well established that ambiguities in insurance contracts are construed in favor of the insured.

*Id.* at 1240.[2]

The policy language at issue here also covers wrongful acts, and no exclusion excepts coverage for wrongful acts committed deliberately. The carrier in this case knew how to employ exclusionary clauses and, as the policy demonstrates, did not hesitate to do so for many categories of claims.[3] We agree with the reasoning of the court in *New Madrid* that "if [the insurance company] wanted to exclude this type of [intentional conduct] liability from its policy it could and should have done so explicitly." *Id.* at 1240.

The cases relied on by carrier to support its contention that the language of the contract does not extend to intentional discrimination are distinguishable. In *Richards v. Fireman's Fund Ins. Co.*, 417 N.W.2d 663 (Minn.App.1988), *pet. for rev. denied* (Minn. March 23, 1988), insured brought a declaratory action against its insurer arguing that the insurer had a duty to defend and indemnify in a suit brought against

them by a former employee. The insurance contract covered liability for "breach of duty * * * by reason of any negligent act, error or omission" committed by the insured. *Id.* at 665. This court construed that policy language to provide coverage "only for the commission of a negligent act or omission." *Id.* at 667. The court then examined the complaint and found that it contained no language which would suggest negligent conduct. Consequently, the court held the allegations against the insured fell outside the policy coverage and the insurer had no duty to defend. *Id.*

The coverage language in *Richards* is narrower than the language at issue here. In *Richards*, coverage is provided for "breach of duty" claims limited to those arising from "any negligent act, error or omission." Both the trial and appellate courts construed this language to mean that only negligent acts were covered. In this policy, by contrast, coverage is provided for a "wrongful act" based on an "error or omission," "negligence," "breach of duty," or on a "misstatement or misleading statement." Although negligent acts are provided for, the concept of negligence does not modify each class of covered act as it did in *Richards*. Therefore, the "wrongful acts" language of the school district's policy covers a broader range of conduct than does the "breach of duty by reason of negligent acts" language of the *Richards* contract. As the federal appellate court noted in *New Madrid*, " 'wrongful acts' can fairly be read to encompass more affirmative, willful behavior than can the phrase 'negligent acts, errors and omissions.' " *Id.*, 904 F.2d at 1239. The other

**2.** Although *New Madrid* was decided under Missouri law, we find no basis for suggesting that Minnesota courts would take a significantly different approach to the construction of an insurance contract.

**3.** In fact, a number of the exclusions enumerated in the policy appear to arise out of intentional and wrongful conduct. For example, personal injury claims based on false imprisonment, wrongful entry and invasion of privacy are excluded from coverage, as are dishonest acts which were committed deliberately. Interestingly, claims that result from the school district's failure to desegregate are not covered, nor

are claims that result from "operating or permitting any educational or extra curricular activity on a discriminatory basis." If intentional misconduct is exempted under the express language of the contract and by public policy as carrier maintains, it would appear unnecessary to set out a list of exclusions resulting from intentional misconduct. In addition, the exclusion regarding the operation of school activity on a discriminatory basis reveals that the carrier was not unaware of the possibility of civil rights claims being brought against the insured. *See School Dist. v. Continental Cas. Co.*, 912 F.2d 844, 849 (6th Cir.1990).

cases relied on by carrier are similarly inapposite. *See School Dist. No. 1 v. Mission Ins. Co.*, 58 Or.App. 692, 650 P.2d 929 (1982), *pet. for rev. denied* (Or. Mar. 29, 1983) (policy covering negligent acts held to exclude coverage for intentional conduct); *Golf Course Superintendents Ass'n v. Underwriters at Lloyd's, London*, 761 F.Supp. 1485 (D.Kan 1991) ("wrongful act" in liability policy limited coverage to negligent conduct).

Consistent with the reasoning of *New Madrid*, we hold that a coverage clause which indemnifies "wrongful acts," designating them to include errors and without an overall requirement of negligence, covers claims resulting from the school district's alleged intentional discrimination. *See also School Dist. v. Continental Cas. Co.*, 912 F.2d 844 (6th Cir.1990) (wrongful acts policy held to cover claim against school district for intentional religious discrimination).

■ Notwithstanding the wrongful acts language, carrier argues that public policy prohibits insurance coverage for intentional discrimination and for support relies upon *St. Paul Fire & Marine Ins. Co. v. Briggs*, 464 N.W.2d 535 (Minn.App.1990), *pet. for rev. denied* (Minn. Mar. 15, 1991). In *Briggs*, the respondent was covered by a director's and officer's liability policy which covered "any negligent act, any error, any omission or any breach of duty." *Id.* at 538. Two officers of the company argued that this policy indemnified them for claims brought by the IRS and the states of Minnesota and Nebraska for their intentional withholding of taxes. This court reiterated the "central concept of insurance that a single insured will not be allowed, through reckless or intentional acts, to control the risks covered by the policy." *Id.* at 539. Coverage for tax liability was denied partly on the basis that "it would be contrary to public policy to require insurers to pay for losses occasioned by willful acts." *Id.*

Carrier argues that the principle articulated in *Briggs* operates to prohibit coverage as a matter of public policy. We decline to apply the *Briggs* principle so broadly. We first note that *Briggs* involved ambiguous coverage language ending with a general exclusion for "uninsurable" liabilities. *Id.* at 538. This language contrasts with the broad "wrongful acts" coverage at issue here. While public policy may assist a court in construing ambiguous contract language, *Seaway Port Auth. v. Midland Ins. Co.*, 430 N.W.2d 242, 249 (Minn. App.1988), we do not read *Briggs* to announce an absolute rule of uninsurability for intentional acts when the policy provides coverage. Subsequent Minnesota cases have enforced liability contracts in accordance with their terms even when insureds commit intentional wrongful acts. *See St. Paul Fire & Marine Ins. Co. v. Love*, 459 N.W.2d 698 (Minn.1990) (professional liability policy covers damages caused by psychologist's sexual relationship with patient).

In addition, we do not believe that holding the carrier liable in this case will encourage or stimulate intentional discriminatory conduct in the future. The Sixth Circuit in *Continental Cas. Co.* addressed the same issue with reference to a school district's alleged religious discrimination and concluded:

> Perhaps the existence of liability insurance might occasionally "stimulate" such a contretemps, but common sense suggests that the prospect of escalating insurance costs and the trauma of litigation, to say nothing of the risk of uninsurable punitive damages, would normally neutralize any stimulative tendency the insurance might have.

912 F.2d at 848. *See also New Madrid*, 904 F.2d at 1241–43 (Missouri public policy against insuring intentional acts does not defeat policy's express coverage). *But see Ranger Ins. Co. v. Bal Harbour Club, Inc.*, 549 So.2d 1005 (Fla.1989) (public policy prohibits a private club from being indemnified for loss resulting from intentional religious discrimination).[4]

**4.** The Florida Supreme Court in *Ranger* employed a two-factor test to determine whether

purported civil liability coverage conflicts with public policy. *Ranger Ins. Co. v. Bal Harbour*

Finally, we acknowledge the competing public policies which favor freedom of contract and the enforcement of insurance contracts according to their terms. *Ranger,* 549 So.2d at 1010, n. 1 (Ehrlich, C.J., dissenting). When the language of the policy, as here, provides coverage for wrongful acts, we will not read into the contract an exception for claims resulting from alleged intentional discrimination by the school district. The carrier is, of course, free to expressly provide an exclusion for such conduct in the future. We enforce this insurance contract as written.

## II.

■ In the second coverage dispute arising out of this policy, the carrier argues that because Mohn in his appeal to this court sought only "reinstatement" and not money damages, there was no duty to defend as the policy does not cover claims for nonmonetary relief. Neither party identifies Minnesota case law which controls this issue. The question must be determined by an interpretation of the contract language itself, taking into account the usual breadth of an insurer's obligation to defend. *See Lanoue v. Fireman's Fund Am. Ins. Cos.,* 278 N.W.2d 49, 53 (Minn. 1979).

The policy's general coverage provision states protection against "losses and expenses" occurring when claims or suits are brought against the insured. On the same page, under the heading "Your liability protection," the policy promises payment for amounts "you're legally required to pay" as a result of claims or suits brought against the insured. For purposes of resolving the reimbursement of costs in defending the Mohn claim, these two provisions appear to conflict. It is clear that court costs and attorney fees are "ex-

penses" occurring from a claim. Less certain is whether they constitute amounts the school district was "legally required to pay." This contradiction creates an ambiguity which is appropriately resolved in favor of the insured. *Columbia Heights Motors, Inc. v. Allstate Ins. Co.,* 275 N.W.2d 32, 36 (Minn.1979).

We are also unpersuaded by the carrier's reliance on *Thief River Falls v. United Fire & Cas. Co.,* 336 N.W.2d 274 (Minn. 1983). In that case the court held that a suit for a writ of mandamus to compel initiation of condemnation proceedings was not a suit "seeking damages" as provided by the duty to defend clause of the insurance contract. *Id.* at 275. The policy in this case, however, does not limit recovery to suits seeking damages, but contains language arguably encompassing any losses or expenses incurred when a lawsuit is brought against the district for a wrongful act.

The policy covers "losses and expenses" which arise from claims brought against the school district for a wrongful act based on an error or omission. Moreover, the mishandling of employment rights is typical of the subjects coming within errors and omissions coverage of a public body. District officials erred in failing to reinstate Mohn and engendered expenses to defend Mohn's legal claim. We further observe that this claim would in most cases be accompanied by a demand for damages in the form of lost compensation. We conclude that under this policy the carrier is required to cover costs and expenses associated with Mohn's claim for reinstatement.

■ The carrier asserts that the district's refusal to reinstate Mohn is clearly an intentional act in violation of Minnesota law, and should therefore be excluded un-

---

*Club, Inc.,* 549 So.2d 1005, 1007 (Fla.1989). Under the first factor it must be determined whether the conduct of the insured is the type that will be encouraged by insurance. The second factor involves an inquiry into the *purpose* which is served by the imposition of liability for that conduct, whether designed to deter wrongdoers or to compensate victims. *Id.* The court concluded that insurance for intentional religious discrimination has the effect of encourag-

ing such conduct and that the primary purpose for the imposition of civil liability for intentional acts of discrimination is deterrence of wrongdoing rather than compensation of victims. *Id.* at 1008–09.

Even if we were to adopt the analysis in *Ranger,* it is likely that a public school district has less to gain and more to lose by engaging in intentional discrimination even with insurance coverage, than does an exclusive private club.

der the policy of excluding intentional harmful acts from coverage. When the school district refused to reinstate Mohn, however, it was far from settled that the district's actions were a violation of Minnesota law. In fact, it took an appeal to this court and a published decision of a divided panel to finally resolve the issue under Minn.Stat. § 125.12. The district's actions may ultimately have been deemed a violation of Minnesota law, but they were taken in good faith and are more fairly characterized as an administrative error. Moreover, although the district intended to refuse the reinstatement, there is no evidence that they intended harm as is required for intentional conduct to be excluded from coverage. *Iowa Kemper Ins. Co.*, 269 N.W.2d at 887.

## DECISION

The trial court correctly determined that the carrier is liable to the school district for payments of $36,615.20 arising out of the Stajer and Mohn litigation. The district is also entitled to fees and expenses incurred in pursuing this appeal.

Affirmed.

FLEMING, Judge (dissenting).

I respectfully dissent on the question of St. Paul Fire's duty to defend the school district on the claims brought against it by Robert Mohn. As a general rule, an insurer's duty to defend arises when the claim against the insured, if established, would require the insurer to indemnify the insured. *United States Fidelity & Guaranty Co. v. Louis A. Roser Co.*, 585 F.2d 932, 936 (8th Cir.1978); *Mutual Serv. Cas. Ins. Co. v. Luetmer*, 474 N.W.2d 365, 368 (Minn.App.1991). In this case, the only relief Mohn sought was reinstatement. Clearly, St. Paul Fire could not reinstate Mohn. The claims brought by Mohn against the school district did not fall within the indemnification coverage of the St. Paul Fire policy, and St. Paul Fire was not obligated to defend against those claims.

The St. Paul Fire policy provides:

This agreement protects against losses and expenses that occur when claims or suits are brought against you or any protected person for a wrongful act based on:

• An error or omission.

• Negligence

• Breach of duty. Or

• Misstatement or misleading statement.

I do not agree that St. Paul Fire's agreement to pay "losses and expenses" can be converted into an open-ended obligation to defend *any* suit brought against the insured. If the school district, without justification, breached a contract with one of its suppliers, the majority's interpretation of the policy language would require St. Paul Fire to defend a claim brought against the school district as a result, since it would be an "error" for the school district to breach a contract in this manner. It seems clear to me that this is not what the parties intended.

The duty to defend under an insurance policy is broader than the duty to indemnify. *Jostens, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161, 165–66 (Minn.1986). However, the duty to defend must be measured against the duty to indemnify. This is the contractual undertaking to which an insurer agrees. Because the majority's opinion imposes upon the insurer an obligation it did not agree to assume, I respectfully dissent.