INDEPENDENT SCHOOL DISTRICT
NO. 697, EVELETH, Minnesota,
Respondent,

v.

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
Petitioner, Appellant.

No. C2–92–1625.

Supreme Court of Minnesota.

April 29, 1994.

Joseph J. Roby, Jr., Johnson, Killen, Thibodeau & Seiler, P.A., Duluth, for appellant.

Scott C. Neff and Gina M. Palokangas of The Trenti Law Firm, Virginia, for respondent.

## OPINION

TOMLJANOVICH, Justice.

In this breach of insurance contract action, petitioner, St. Paul Fire and Marine Insurance Co. ("St. Paul"), asks us to review whether the court of appeals correctly concluded that under a school administration liability policy issued to respondent, School District No. 697, Eveleth, Minnesota ("the district"), (1) St. Paul had a duty to defend and pay settlement costs incurred in an intentional age discrimination claim brought against the district, and (2) St. Paul had a duty to defend a reinstatement claim brought against the district which did not seek money damages. 495 N.W.2d 863. We affirm.

The district holds a school administration liability protection insurance policy with St. Paul. This policy provides in relevant part:

*What This Agreement Covers*

This agreement protects against losses and expenses that occur when claims or suits are brought against you or any protected person for a wrongful act based on

• An error or omission

• Negligence

• Breach of duty. Or

• Misstatement or misleading statement.

\* \* \* \* \* \*

*Your liability protection.* We'll pay amounts you're legally required to pay as a result of claims or suits brought against you.

\* \* \* \* \* \*

*Legal costs and related expenses.* We'll defend any suit brought against you or any protected person for covered claims, even if the suit is groundless or fraudulent.

We are asked to consider whether this language required St. Paul to defend and pay costs incurred in two unrelated claims brought against the district by employees.

*The Stajer Claim*

Alida Stajer worked as a secretary for the district from 1982 to 1988. On December 8, 1986, Stajer filed a charge of age discrimination in violation of the Minnesota Human Rights Act, Minn.Stat. § 363.03, subd. 1(2)(c) (1988) with the Minnesota Department of Human Rights ("department"). Stajer alleged that on account of her age the district had altered her job duties, lowered her salary, improperly placed her on summer leave and otherwise subjected her to ongoing harassment. The department investigated Stajer's allegations and on March 15, 1988 found probable cause to believe the district had engaged in discriminatory practices. In July 1988 the district tendered defense of the Stajer claim to St. Paul. After investigating the claim, St. Paul on September 15, 1988 declined to defend the district, stating that its liability policy did not cover intentional acts.

In October 1989 the department issued a formal complaint against the district. The district filed an answer denying the essential allegations. The district again tendered defense of the claim to St. Paul, and St. Paul again declined to defend. In the meantime, the department and the district entered into settlement discussions. The district notified St. Paul of these discussions and the settlement amount under consideration. An $18,-000 settlement was reached in September 1990 covering damages for mental anguish, embarrassment and suffering, and backpay.[1]

None of the attorney fees and litigation expenses incurred by the district in defending the Stajer matter has been paid by St. Paul.

*The Mohn Claim*

Robert Mohn, a former principal and social studies teacher employed by the district, submitted a letter of resignation on July 12, 1988, but attempted to reserve his reinstatement rights. The district accepted the resignation, but rejected the attempted reservation of reinstatement rights. In the 1989–90 school year Mohn's prior administrative position became vacant and Mohn requested reinstatement to that position. The district refused the request. Mohn then sued the district in state district court on August 9, 1989, seeking a declaratory judgment, money damages, and reinstatement under Minn. Stat. § 125.12, subd. 6b (1988). Mohn's district court suit was dismissed for lack of jurisdiction. Mohn appealed the dismissal to the court of appeals but later voluntarily dismissed the appeal. Subject to a written reservation of rights agreement, St. Paul defended the district court suit and subsequent appeal without cost to the district.

In the summer of 1990 Mohn's prior administrative position became available again. The district hired a probationary teacher for the position, and Mohn contended that he should have been reinstated. On October 10, 1990, Mohn petitioned the court of appeals for a writ of certiorari to review the district's most recent decision not to reinstate him. The court granted the writ and decided the issue in Mohn's favor. *Mohn v. Independent Sch. Dist. No. 697,* 471 N.W.2d 723 (Minn. App.1991), *pet. for rev. denied,* (Minn., Aug. 29, 1991). St. Paul denied any duty to defend the appeal by Mohn on the grounds that the appeal sought only reinstatement and not money damages. Consequently, the district bore all litigation costs and expenses defending the appeal.

The district commenced this action against St. Paul to recover defense and settlement costs incurred in the Stajer claim and defense costs incurred defending Mohn's sec-

---

1. The district concedes that the backpay portion of the settlement is not covered by its liability policy with St. Paul.

ond lawsuit in the court of appeals. The district court issued an order granting the district's motion for summary judgment on St. Paul's duty to defend both claims. The court of appeals affirmed with Judge Fleming dissenting on the question of St. Paul's duty to defend the reinstatement claim.

## I.

■ We first consider whether the liability policy issued by St. Paul provides coverage for Stajer's claim of intentional age discrimination.[2] The policy provides coverage for "wrongful act[s] based on: an error or omission, negligence, breach of duty, or misstatement or misleading statement." The policy does not expressly exclude intentional wrongful acts from coverage. St. Paul argues the language of the policy should be construed to cover only negligent misconduct.

■ Generally, an insurance contract "must be construed as a whole, and unambiguous language must be given its plain and ordinary meaning." *State Farm Ins. Cos. v. Seefeld,* 481 N.W.2d 62, 64 (Minn.1992). The terms "wrongful act" and "breach of duty" are ordinarily understood to encompass intentional as well as negligent misconduct. Black's Law Dictionary 1612 (6th ed. 1990) defines "wrongful act" as:

> Any act which in the ordinary course will infringe upon the rights of another to his damage, unless it is done in the exercise of an equal or superior right. Term is occasionally equated to term "negligent," but generally has been considered more comprehensive term, *including criminal, willful, wanton, reckless* * * * (emphasis added).

Black's at 189 defines "breach of duty" as:

> In a general sense *any violation* or omission of a legal or moral duty * * * (emphasis added).

We conclude that the language of the district's policy unambiguously provides coverage for Stajer's claim. Intentional discrimination is a "wrongful act" based on a "breach of duty." The Eighth Circuit has interpreted a similar school district liability policy to cover intentional misconduct. *New Madrid Sch. Dist. No. 1 v. Continental Casualty Co.,* 904 F.2d 1236 (8th Cir.1990).

We find the cases cited by St. Paul which interpret "errors and omissions" policies to exclude coverage for intentional acts to be inapposite. These cases addressed policies with much narrower coverage language than that here. In *Richards v. Fireman's Fund Ins. Co.,* 417 N.W.2d 663 (Minn.App.1988), *pet. for rev. denied* (Minn., Mar. 23, 1988); and *School Dist. No. 1, Multnomah County v. Mission Ins. Co.,* 58 Or.App. 692, 650 P.2d 929 (1982), the policies in question provided coverage to insureds for "breaches of duty" arising from "any negligent act, error or omission." *Id.* 650 P.2d at 932. Unlike the policy at issue here, the policies in *Richards* and *School Dist. No. 1* modified each class of covered act with the concept of negligence and did not provide coverage for "wrongful acts" generally.

If St. Paul had intended to exclude intentional acts from the insurance contract, it should have explicitly excluded them. St. Paul could either have included a general intentional acts exclusion in the contract, or it could have more narrowly excluded intentional age discrimination claims such as this one, much as it did, in fact, exclude coverage for other specific types of intentional conduct.[3]

## II.

■ St. Paul also argues that even if a "wrongful act" insurance contract purports to

---

2. St. Paul alleges solely that the policy does not provide coverage for "disparate treatment" discrimination. "Disparate treatment" discrimination requires a showing of discriminatory intent, as opposed to "disparate impact" discrimination, which exists where facially neutral policies have an unintended discriminatory impact.

3. The contract expressly excludes, for example, liability for dishonest acts which a court holds were committed deliberately, claims for bodily injury or property damage, and claims based on failure to integrate or desegregate the student enrollment, and claims resulting from operating or permitting any educational or extracurricular activity on a discriminatory basis. The presence of these exclusions covering specific types of intentional wrongful conduct suggests St. Paul understood other types of intentional misconduct to be covered by the policy.

provide coverage for an intentional discrimination claim, coverage for intentional misconduct, as opposed to negligence, is void as a matter of public policy. St. Paul argues that enforcement of insurance contracts which provide coverage for intentional wrongful acts will encourage wrongful acts by policyholders.

As a general rule, insurance contracts are enforced as they are written. Petitioner cites *St. Paul Fire & Marine Ins. Co. v. Briggs,* 464 N.W.2d 535 (Minn.App.1990), *pet. for rev. denied* (Minn., Mar. 15, 1991), in which the court of appeals held that tax liability is uninsurable as a matter of law, to support the proposition that public policy in Minnesota prohibits insurance coverage for any kind of intentional wrongful act. We decline to adopt such a broad rule here.

The narrow question presented in this case is whether public policy should void school administration "wrongful act" insurance coverage for intentional discrimination claims brought against insureds. This is an issue of first impression in Minnesota, but two federal circuits have rejected voiding insurance coverage on public policy grounds in cases involving similar school administration liability policies. *New Madrid County Reorganized Sch. Dist. No. 1 v. Continental Casualty Co.,* 904 F.2d 1236 (8th Cir.1990); *School Dist. for the City of Royal Oak v. Continental Casualty Co.,* 912 F.2d 844 (6th Cir.1990). The Eighth Circuit in *New Madrid* held that public policy in Missouri did not void a school district liability policy providing coverage for sums insured paid to teachers in settlement of a civil rights action. The Sixth Circuit in *Royal Oak* held that public policy in Michigan did not void a school district's liability policy which provided coverage for damages arising out of the insured's religious discrimination.

We do not believe that a school district will discriminate against its employees simply because it carries wrongful act insurance coverage; nor do we believe that school districts carrying this type of insurance coverage have

a license to commit intentional wrongs. Accordingly, we enforce the contract as it is written.[4]

### III.

■ We next consider whether St. Paul had a duty to defend the reinstatement claim brought by Robert Mohn in the court of appeals. St. Paul alleges that because Mohn sought only reinstatement and made no claim for money damages in the certiorari proceeding, St. Paul had no duty to defend the district in this proceeding.

This court has stated that if "any part of the claim is arguably within the scope of coverage afforded by the policy, the insurer should defend." *Brown v. State Auto & Casualty Underwriters,* 293 N.W.2d 822, 825 (Minn.1980). Accordingly, we must decide whether Mohn's reinstatement claim is within the scope of coverage afforded by the district's liability policy. The district's failure to recognize Mohn's reinstatement rights under Minn.Stat. § 125.12, subd. 6b, is clearly a "wrongful act" as defined by the policy. The more difficult question presented is whether St. Paul is obligated to defend a claim otherwise within the scope of coverage where the claim does not seek any money damages.

Ordinarily liability insurance contracts expressly limit the insurer's duty to defend to claims seeking damages against the insured. For example, in the case of *City of Thief River Falls v. United Fire & Casualty Co.,* 336 N.W.2d 274 (Minn.1983), relied on by St. Paul, the insurer was obligated to defend "any suit against the insured alleging [a] negligent act, error or omission and seeking damages on account thereof." We held that an action for a writ of mandamus is not an action "seeking damages" as required by the policy. *Id.* at 276. The policy here, however, unlike that in *Thief River Falls,* does not limit recovery to suits "seeking damages." In its policy, St. Paul agrees to "protect against losses and expenses that occur when claims or suits are brought against" the in-

---

4. Because we reject petitioners' contention that coverage for discrimination claims are uninsurable as a matter of public policy, we also reject petitioners' argument that the insurance contract

expressly incorporated this public policy through the contract's limitation on coverage for "matters which may be uninsurable under law."

sured. Because court costs and attorney fees are "expenses," the language in this provision indicates that St. Paul is obligated to defend even claims which do not seek money damages. In light of the unusually broad coverage language in the policy, we hold that St. Paul had a duty to defend Mohn's claim for reinstatement.[5]

### IV.

■■■ Finally, we consider whether the district is entitled to be reimbursed for attorney fees and costs expended in this action. The general rule is that attorney fees are allowed only when authorized by statute or provided for in the contract. *Lanoue v. Fireman's Fund American Ins. Cos.,* 278 N.W.2d 49, 54 (Minn.1979). This court, however, has recognized a limited exception to this general rule and has allowed attorney fees in a declaratory action by an insured to establish the insurer's contractual duty to defend and indemnify. *Id.; Morrison v. Swenson,* 274 Minn. 127, 142 N.W.2d 640 (1966). Because St. Paul breached its contractual duty to defend and indemnify the district with respect to the Stajer and Mohn claims, we conclude that the district is entitled to be reimbursed for attorneys fees and costs expended in this litigation.

Affirmed.

---

5. The Oklahoma Court of Appeals reached a similar conclusion interpreting apparently identical policy language in *St. Paul Fire and Marine Ins. Co. v. Pioneer Area Vo–Tech. Sch.,* 852 P.2d 795 (Okla.Ct.App.1993). In *Pioneer* the insurer sought a declaratory judgment that it had no duty to defend an insured vocational technical school in a class action seeking declaratory and injunctive relief. The policy provided as here coverage for "losses and expenses that occur when claims are brought against you or any protected person for a wrongful act * * *." *Id.* at 796. Both parties agreed that the case did not involve the insureds liability to pay damages which St. Paul was required to cover under the policy. The court held that the insurer had a duty to defend. *Id.* at 798.