**Robert AMOS, a minor, by his mother and natural guardian, Patricia AMOS, and Patricia Amos, individually, Appellants,**

v.

**Torrence Wendell CAMPBELL, et al., Defendants,**

and

**National Union Fire Insurance Company of Pittsburgh, PA, garnishee, Respondent.**

No. CX–98–1921.

Court of Appeals of Minnesota.

May 11, 1999.

Richard W. Hechter, Thill Law Firm, P.A., St. Louis Park, MN (for appellants)

William M. Hart, Elizabeth A. Foley, Meagher & Geer, P.L.L.P., Minneapolis, MN (for respondent)

Considered and decided by AMUNDSON, Presiding Judge, CRIPPEN, Judge, and ANDERSON, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Appellants challenge the district court judgment awarding to respondent insurance carrier declaratory relief based on policy exclusions. Because the district court correctly ruled that the policy's assault or battery exclusion barred coverage, we affirm.

## FACTS

The present action was commenced to enforce a *Miller–Shugart* style agreement. The material facts are undisputed.

In 1990, the Minneapolis Public School District (school district) hired teacher Torrence Wendell Campbell. After further investigation, conducted from the time Campbell began work until an earlier lawsuit, it was discovered that Campbell's credentials and history, less than exemplary, included a conviction for contributing to the delinquency of a minor, suspension from a previous teaching position, and involvement in a homosexual stabbing. After employment by the school district, Campbell was transferred from school to school because of his abusive conduct towards students and teachers, which included an assault on a third-grade special-education student for which he was charged with fifth-degree assault. Campbell was assessed only one- and three-day suspensions as an immediate response to his prior behavior.

In 1991, Campbell was placed at Morris Park Elementary School. In late 1991, Campbell sexually assaulted appellant Robert Amos. In 1993, Campbell was charged with three counts of criminal sexual conduct, which included his assault on appellant. In December 1993, Campbell pleaded guilty to one count of second-degree criminal sexual conduct.

In July 1993, Robert Amos and his mother, appellant Patricia Amos, both as guardian and individually, commenced a lawsuit against Campbell, the school's principal, and the school district. Appellants asserted, against the district, claims for negligent hiring, negligent supervision, negligent retention, and violation of constitutional rights, all of which resulted in bodily injuries and emotional distress. The district tendered its defense to its insurer, respondent National Union Fire Insurance Company. Respondent refused the tender. In July 1995, the district court approved a *Miller v. Shugart* type settlement between the school district and appellants for $250,000.

In September 1997, appellants commenced the present garnishment action against respondent. Respondent moved for summary judgment, which was granted based on exclusions in the policy.

The school district's errors and omissions insurance policy covered

> any Wrongful Act * * * of the Insured or of any other person for whose actions the Insured is legally responsible, but only if such Wrongful Act first occurs * * * in the performance of duties for the School District.

A "wrongful act" is defined in the policy as "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement or omission committed solely in the performance of duties for the School District." But the policy excluded the following claims:

> (a) to any claim involving allegations of * * * criminal acts or omissions * * *;
>
> (b) to any claims arising out of * * * assault or battery * * *;
>
> (c) to any claim arising out of bodily injury * * *;

Based on the "assault or battery" exclusion and the fact that all of appellants' claims were based on an assault, the district court dismissed appellants' garnishment action with prejudice and on the merits.

## ISSUE

Do respondent's insurance policy exclusions bar coverage for the employee's assault?

## ANALYSIS

On appeal from summary judgment, a reviewing court must determine whether the district court erred in its application of the law and whether there are any genuine issues of material fact. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990). In so doing, a reviewing court views "the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

This case focuses on the interpretation of an insurance policy. Under Minnesota law, on established facts, insurance coverage issues and the construction and interpretation of a policy are questions of law. *Jenoff, Inc. v. New Hampshire Ins. Co.*, 558 N.W.2d 260, 262 (Minn.1997); *Haarstad v. Graff*, 517 N.W.2d 582, 584 (Minn.1994). This court is not bound by a district court's decision on a question of law. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn. 1984).

The analysis of the parties' arguments requires this court to begin with a review of their agreement—the insurance policy. "An insurance policy provision is to be interpreted according to both its plain, ordinary meaning and what a reasonable person in the position of the insured would have understood it to mean." *Retail Sys., Inc. v. CNA Ins. Cos.*, 469 N.W.2d 735, 737 (Minn. App.1991) (citing *Farmers Home Mut. Ins. Co. v. Lill*, 332 N.W.2d 635, 637 (Minn.1983)), *review denied* (Minn. Aug. 2, 1991). Unambiguous language in an insurance policy must be accorded its plain and ordinary meaning. *SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305, 311 (Minn.1995). Moreover, a

court "must not create an ambiguity where none exists in order to afford coverage to the insured." *Progressive Cas. Ins. Co. v. Metcalf*, 501 N.W.2d 690, 692 (Minn.App.1993).

Appellants challenge the district court's order as to the application of the policy's exclusions. The burden is on the insurer to establish the applicability of an exclusion. *SCSC Corp.*, 536 N.W.2d at 311–14. Exclusions are strictly interpreted against the insurer. *Hennings v. State Farm Fire & Cas. Co.*, 438 N.W.2d 680, 683 (Minn.App.1989), *review denied* (Minn. June 9, 1989). If the insurer demonstrates the applicability of an exclusion, then the insured bears the burden of proving an exception to the exclusion. *SCSC*, 536 N.W.2d at 314. The reasoning is that the exception "restores" coverage, and the insured bears the ultimate burden of proving coverage. *Id.*

The policy issued by respondent provided basic errors and omissions coverage for a "wrongful act" of the school district. The term "wrongful act" has ordinarily been understood to encompass intentional as well as negligent misconduct. *Independent Sch. Dist. No. 697, Eveleth v. St. Paul Fire & Marine Ins. Co.*, 515 N.W.2d 576, 579 (Minn. 1994) (citing *Black's Law Dictionary* 1612 (6th ed.1990)). The policy at issue similarly defined a wrongful act as "any actual or alleged breach of duty, neglect, error * * * in the performance of duties for the School District."

Appellants argue that, because the general intent of the policy was to provide coverage for wrongful acts of administrative employees of the school district, including the superintendent, assistant superintendent, and principals, this court should focus on the conduct of such employees and how the exclusions apply to that conduct. Appellants reason that respondent should provide coverage because the school district's administrative employees were negligent in both hiring and retaining the assailant, Campbell, who was not a covered employee under the disputed policy. Appellants argue that, under the policy, the exclusions do not apply, because the negligent hiring and retention did

not result in either an assault or battery or bodily injury.

Appellants' suggested analysis is without support in Minnesota law. While this court has explained that when reviewing an insurance policy the court's function is to ascertain and give effect to the intentions of the parties, *Kabanuk Diversified Invs., Inc. v. Credit Gen. Ins. Co.*, 553 N.W.2d 65, 70 (Minn. App.1996) (deferring to assault or battery exclusion), *review denied* (Minn. Oct. 28, 1996), we have also reiterated that unambiguous language must be given its plain and ordinary meaning. *Metcalf*, 501 N.W.2d at 692. Respondent's policy terms, particularly the exclusions, have received a consistent and unambiguous reading by Minnesota courts confirming that summary judgment for respondent was properly granted.

The district court concluded that coverage did not exist for appellants' settlement because of the policy's exclusions. The policy excluded coverage for any claims "arising out of * * * assault or battery," and "arising out of bodily injury." Despite appellants' attempt to focus this case on the alleged negligence of the school district, the policy's "arising of out" language requires this court to instead focus on the direct cause of appellants' original claim—the sexual assault.

In earlier cases interpreting the meaning of "arising out of," the supreme court looked for an "actual or necessary causal connection" between that which is covered and the injury. *Engeldinger v. State Auto. & Cas. Underwriters*, 306 Minn. 202, 207, 236 N.W.2d 596, 599 (1975) (interpreting the phrase as a coverage trigger under an automobile insurance policy). In concluding that courts must determine coverage "upon the particular facts presented," the *Engeldinger* court focused on the "primary negligence" to determine whether a policy's "arising out of" language provided coverage. *Id.* at 207–08, 236 N.W.2d at 599–600. Appellants ask this court similarly to focus on the primary negligence of the insured employees in this case, claiming that the negligent hiring and retention were the primary acts and are not excluded under the policy. But the court's reasoning actually laid the foundation for first focusing on the causal connection between the injury and what caused the injury before determining whether this "primary negligence" in fact should be covered under the policy. If the causal act is also "primary," i.e., covered under the policy, then the act is covered or is excluded because of an exclusion such as in the present case. *Id.* at 208, 236 N.W.2d at 600.

Such an interpretation is consistent with case law. Soon after *Engeldinger*, the court again reviewed an exclusion including the phrase "arising out of" in *Rausch v. Beech Aircraft Corp.*, 277 N.W.2d 645 (Minn.1979). In *Rausch*, the court relied on previous interpretations of "arising out of," including such phrases as " 'flowed from,' 'grew out of' or 'natural and reasonable consequences.' " *Id.* at 647 (quoting *Associated Indep. Dealers, Inc. v. Mutual Serv. Ins. Cos.*, 304 Minn. 179, 181–82, 229 N.W.2d 516, 518 (1975)). The *Rausch* court was concerned not only with finding a "nexus" between a cause and the injury, but also with focusing on "the original activity out of which the entire matter arose," that being the "most obvious of tortious events" that led to the injury—a plane crash. *Id.* at 647–48.

Any further doubt as to the application of "arising out of" is removed by the supreme court's holding in *National Hydro Sys. v. M.A. Mortenson Co.*, 529 N.W.2d 690 (Minn. 1995), explaining that the phrase requires a " 'temporal, geographical, or causal nexus between the [indemnitor's] work and the injury which gives rise to liability.' " *Id.* at 693 (citation omitted). Recently again, the supreme court reiterated that " 'arising out of' in an insurance policy * * * mean[s] 'causally connected with' and not 'proximately caused by.' " *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 419 (Minn.1997) (quoting *Faber v. Roelofs*, 311 Minn. 428, 437, 250 N.W.2d 817, 822 (1977)).

In support of its argument that "arising out of" allows a more extended analysis, appellants rely on foreign case law in an attempt to establish that Minnesota law is unclear as to the interpretation of respondent's policy. Appellants rely on the holdings in *Board of Pub. Educ. v. National Union Fire Ins. Co.*, 709 A.2d 910 (Pa.Super.1998), and *Durham City Bd. of Educ. v. National Un-*

*ion Fire Ins. Co.*, 109 N.C.App. 152, 426 S.E.2d 451 (1993), to conclude that a negligence claim based on an assault should focus on the negligence and not those exclusions that bar such assault or their injuries. The foreign case law is both distinguishable and unpersuasive.

In *Board of Pub. Educ.* and *Durham*, the Pennsylvania Superior Court and the North Carolina Court of Appeals confronted similar errors and omissions policies issued by respondent to local school districts. In response to arguments similar to those raised here, both courts barred the application of identical exclusions in favor of the school boards' negligence claims. But both courts were ruling exclusively on the insurer's broader duty to defend, an issue not present in this controversy. *Board of Pub. Educ.*, 709 A.2d at 917; *Durham*, 426 S.E.2d at 453–54.

Although the duty of respondent to defend the school district is not presently before us, we recognize that such a duty could have been triggered by the facts of this case, as it was in *Board of Pub. Educ.* and *Durham*. The duty to defend is much broader than the duty to indemnify. *Compare Eveleth*, 515 N.W.2d at 580 (stating that if " 'any part of the claim is arguably within the scope of coverage afforded by the policy, the insurer should defend' ") (quoting *Brown v. State Auto. & Casualty Underwriters*, 293 N.W.2d 822, 825 (Minn.1980)), *with Jostens, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161, 165 (Minn.1986) (the duty to defend is broader than the duty to indemnify). An insurer's obligation to defend does not depend on the merits of the claim asserted, but on whether the allegations in the complaint state a claim that is arguably within the coverage afforded by the policy. *Republic Vanguard Ins. Co. v. Buehl*, 295 Minn. 327, 332–33, 204 N.W.2d 426, 429 (1973). A negligence claim is arguably covered by the policy's duty to defend. But the present case does not rest on the duty to defend, but relies on the more narrow duty to indemnify.

In rejecting appellants' claim and arguments, we conclude that at least two of the policy's exclusions apply and bar appellants' claim – both the (1) assault-or-battery and (2) bodily-injury exclusions.

As to the assault-or-battery exclusion, not only is the "arising out of" analysis, set forth earlier, dispositive, but also Minnesota courts have faced this type of exclusion in other contracts and upheld them. In both *Roloff v. Taste of Minn.*, 488 N.W.2d 325, 326 (Minn. App.1992), *review denied* (Minn. Oct. 20, 1992), and *Ross v. City of Minneapolis*, 408 N.W.2d 910, 912–13 (Minn.App.1987), *review denied* (Minn. Sept. 23, 1987), this court examined policy exclusions for assault or battery as opposed to coverage arguments under negligence principles.

In *Ross*, this court reversed the trial court's judgment of coverage, ruling that the action was based on an assault or battery, as opposed to the trial court's reliance on negligence. 408 N.W.2d at 914. Just as in the present dispute, the insured argued that an injury, caused directly by a physical assault, was the result of the city's negligent failure to protect patrons of an event at a city-owned complex. *Id.* at 912. The court rejected this circular reasoning, which is unsupportable given the clear exclusion of the insurance policy. *Id.* The court explained that " 'the court has no right to read an ambiguity into plain language of an insurance policy in order to construe it against the one who prepared the contract.' " *Ross*, 408 N.W.2d at 914, (quoting *Estes v. State Farm Fire & Cas. Co.*, 358 N.W.2d 123, 124 (Minn.App.1984)).

In *Roloff*, we again rejected coverage relying on the holding in *Ross*. *Roloff*, 488 N.W.2d at 326. We further explained that an assault-and-battery clause "unambiguously excludes coverage when a claim is causally related to an assault or battery." *Id.*

It is not disputed that Robert was assaulted by Campbell. Appellants' original complaint sought, and the settlement reflects, an agreement to pay damages for Campbell's assault on Robert. Appellants ask that respondent provide coverage for those damages. Because the damages were not only causally connected, but also the damages would not have occurred "but for" the assault, we reject coverage based on the "assault or battery" exclusion in the school district's policy.

■ Additionally, the claim fails because of the policy's bodily injury exclusion. The definition of "bodily injury" has received little attention by Minnesota courts, presumably because the definition is clear—a physical manifestation caused by an external act. *See Meadowbrook*, 559 N.W.2d at 419 (analyzing duty to defend emotional distress claim as bodily injury, and insurer's failure to defend suit because claim did not include "sufficient physical manifestations to fit within the policy's bodily injury coverage"). Minnesota courts have previously rejected insurance claims similar to the present case relying on bodily injury exclusions. *See Faber*, 311 Minn. at 435, 250 N.W.2d at 822–23 (denying coverage for negligence claim for injury caused by school bus when policy excluded " 'bodily injury arising out of the * * * use' of the bus").

The causal connection between appellants' injuries and Campbell's assault can be inferred under Minnesota law. Minnesota courts have inferred an intent to cause bodily injury as a matter of law whenever an insured party sexually assaults another person. *State Farm Fire & Cas. Co. v. Williams*, 355 N.W.2d 421, 424 (Minn.1984); *see also Allstate Ins. Co. v. Steele*, 74 F.3d 878, 880 (8th Cir.1996) (inferring intent to cause bodily injury under *State Farm* holding); *R.W. v. T.F.*, 528 N.W.2d 869, 872–73 (Minn.1995) (inference that sexual assault is an intentional act, " 'because one cannot negligently assault another' " (citation omitted)). Appellants' claim would not exist but for a bodily injury. We find that the exclusion applies because appellants' claim is based on bodily injuries sustained from Campbell's assault.

Appellants have not denied that the sexual assault does not fall within the meaning of either exclusion. But they argue that the negligent hiring was the dominant cause of the injury. Respondent's intent to exclude claims arising from the intentional acts of assault or battery or from bodily injury was explicit. *See Eveleth*, 515 N.W.2d at 579 (suggesting that, if insurance company intended to exclude intentional acts from contract, it should have explicitly done so). Furthermore, this court recently explained that in cases focusing on "arising out of" exclu-

sions, "if the immediate cause of injuries constitutes the conduct defined in the exclusion, coverage is defeated for all insureds." *Mork Clinic v. Fireman's Fund Ins. Co.*, 575 N.W.2d 598, 601 (Minn.App.1998). There is no justifiable reason not to apply the exclusion.

We are not permitted to isolate appellants' negligence claim and ignore the fact that both the original cause of action and the school district's settlement were premised on the injury. The supreme court recently reiterated that, in interpreting insurance contracts, courts may not "isolate" events for coverage purposes. *Auto–Owners Ins. Co. v. Todd* 547 N.W.2d 696, 699 (Minn.1996). Appellants' original complaint and final settlement with the school district focused on the injury resulting from the sexual assault. The settlement was to provide reimbursement for emotional distress and medical expenses. To argue that such reimbursement is demanded only for negligence challenges common sense. The case against the school district would not have existed but for the assault and bodily injury. As a result, the policy denies coverage because of exclusions to claims arising out of assault or battery or bodily injury.

■ On a final alternative ground, appellants argue that, because respondent represented that wrongful acts would be covered by the policy, the doctrine of reasonable expectations prohibits the application of the policy's exclusions.

The supreme court has clarified that the reasonable expectations test does not provide an opportunity to ignore policy exclusions or rewrite exclusions that "conform to a result that the insured might prefer." *Board of Regents v. Royal Ins. Co. of America*, 517 N.W.2d 888, 891 (Minn.1994). Furthermore, this court has refused to apply the reasonable expectation doctrine when an assault or battery exclusion was not hidden and was clearly marked and appeared under a capitalized heading entitled "ASSAULT OR BATTERY EXCLUSION # 6." *Ross*, 408 N.W.2d at 914. The exclusions in this case were clearly marked under the heading "EXCLUSIONS." There is no basis to apply the reasonable expectations doctrine in this case

and to do so would overlook clear and unambiguous policy language.

## DECISION

Based on clear and unambiguous policy language, the district court properly denied appellants' coverage claim.

**Affirmed.**

CRIPPEN, Judge (concurring specially)

1.

I concur in the result and in the analysis of an exclusion in the National Union policy for "any claim arising out of bodily injury." This exclusion is unique because it deals with claims arising out of a certain harm suffered, namely, bodily injury. It contrasts with the more common exclusion for claims "arising out of" a certain act or course of action that leads to the suffering of some harm.

As the majority concludes, notwithstanding the fact that the trial court did not employ this ground for its summary judgment, appellants' claims are for bodily injuries inflicted in the course of sexual misconduct and for emotional harm flowing from those injuries.

2.

This conclusion may involve legal consequences for the insurer beyond the holding of the case. The unique type-of-injury exclusion has had remarkably little judicial scrutiny, in this state or others. An exclusion regarding a whole category of damages resulting from wrongful acts may severely limit the value of the coverage, a matter of some concern for legislative and executive policymakers and for court determinations based on the reasonable expectations of the insured.

In this case, we have set aside appellants' reasonable-expectations argument largely because the exclusion appears prominently in the policy. Appellants' limited briefing on the topic is directed against broadly excluding causative acts; appellants contend that the exclusion should not extend to hiring decisions because of representations, attributable to the insurer, that its liability coverage under this policy extended to claims "arising out of" hiring, firing, promotion, or demotion. We are not dealing here with arguments or a supporting record regarding the purchaser's understanding of a type-of-damages exclusion, representations related to that topic, or the cause for or against a broad reading of the exclusion in light of the premium cost of the policy.

3.

This case shows cause for a more cautious analysis of causative-act exclusions like the National Union policy clause on claims arising out of "assault or battery." It should not encompass misconduct of school staff that results from negligent hiring, supervision, or retention conduct—serious errors of school officials that represent a lapse in their fundamental mission to provide a day-long learning environment for children that is, among other things, reasonably safe.

Heretofore, we have reported imprecisely on the doctrine that emerges from cases dealing with exclusions on claims "arising out of" certain conduct. Thus, for example, in explanatory dicta, written by the author of this concurring opinion, we have observed that these exclusions applied when the conduct stated in the exclusion was the "immediate" cause of injuries. *Mork Clinic v. Fireman's Fund Ins. Co.*, 575 N.W.2d 598 (Minn. App.1998). In that discussion, we had no occasion to enunciate whether the immediacy of a cause was examined with respect to the sequence of events, the physical proximity of acts and injuries, or the nature of the causes and effect. *See National Hydro Sys. v. M.A. Mortenson Co.*, 529 N.W.2d 690, 693 (Minn. 1995) (calling for examination of the "temporal, geographical, or causal" nexus between the injury and each of its multiple causes).

The supreme court's thorough exploration of this kind of exclusion is found in *Rausch v. Beech Aircraft Corp.*, 277 N.W.2d 645 (Minn. 1979), where the court determined that an airplane owner's liability defense costs arose out of the crash of the plane rather than from the plane-lessee's dishonor of a contract to pay the costs. The holding prevented recovery under the lessee's insurance policy, which excluded "liability arising out of" use of the aircraft.

The nexus between the act and the injury, the *Rausch* court explained, must be examined as a matter of fact in each case. *Id.* at 647. The court preferred the "fundamental" cause, distinguishing causes that were "incidental" or less "significant." The ruling, as the court saw it, placed causation, for purposes of the exclusion, in "the original activity out of which this entire matter arose." The contract breach, the court noted, was not an intervening cause but was "inextricably interwoven with the use of the aircraft." *Id.*

The *Rausch* analysis says, in my opinion, that the fact-specific analysis should look carefully at the weight or importance of the scrutinized cause in producing the injury. In the language of *Mortenson*, the "causal nexus" is vitally important. The temporal nexus, *Rausch* demonstrates, may require primary attention to the earliest cause, the one that begins the course of events causing injuries.

Using the more considered approach the supreme court has employed, it is a mistake, in my opinion, to find the closest nexus between the teacher and the abused student. The responsibility of district officials to the students is an overwhelming, "fundamental" consideration in determining whether or not children will be safe while in school.

The factual circumstances of the case contrast with the more incidental negligence, for example, of those who stage recreational events. *See Roloff v. Taste of Minn.*, 488 N.W.2d 325 (Minn.App.1992), *review denied* (Minn. Oct. 20, 1992); *Ross v. City of Minneapolis*, 408 N.W.2d 910 (Minn.App.1987), *review denied* (Minn. Sept. 23, 1987). The selection and monitoring of staff is a responsibility that is greater than other supervisory roles. *See Allstate Ins. Co. v. Steele*, 74 F.3d 878, 881 (8th Cir.1996) (parent supervision). And the duty of school officials to students is more direct and personal than the duties of many employers toward those who are in occasional contact with their staff.