# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| G-NEW, INC. DBA GODIVA CHOCOLATIER, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. N21C-10-100 MMJ CCLD |
| ENDURANCE AMERICAN INSURANCE COMPANY, and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., | ) ) ) ) ) | |
| Defendants. | ) ) ) ) ) ) | |

Submitted: June 16, 2022
Decided: September 12, 2022

On Defendants' Motions to Dismiss
**GRANTED IN PART, DENIED IN PART**

On the Parties' Cross-Motions for Partial Summary Judgement
**GRANTED IN PART, DENIED IN PART**

1

# OPINION

Jennifer C. Wasson, Esq., Carla M. Jones, Esq., Potter Anderson & Corroon LLP, Wilmington, DE, Vivek Chopra, Esq., Jonathan G. Hardin, Esq. (Argued), Perkins Coie LLP, Washington, DC, *Attorneys for Plaintiff*

Marc S. Casarino, Esq., Kennedys CMK LLP, Wilmington, DE, Michael L. Zigelman, Esq. (Argued), Kristina I. Duffy, Esq. (Argued), Kaufman Dolowich & Voluck, LLP, New York, NY, *Attorneys for Defendant Endurance American Insurance Company*

Kurt M. Heyman, Esq., Aaron M. Nelson, Esq., (Argued), Heyman Enerio Gattuso & Hirzel LLP, Wilmington, DE, Scott B. Schreiber, Esq., Arthur Luk, Esq., Matthew Bemis, Esq., Elliot Rosenwald, Esq., Arnold & Porter Kaye Scholer LLP, Washington, DC, *Attorneys for Defendant National Union Fire Insurance Company of Pittsburgh, Pa.*

**JOHNSTON, J.**

## FACTUAL AND PROCEDURAL CONTEXT

Plaintiff G-New, Inc. d/b/a Godiva Chocolatier, Inc. ("Godiva") is a Delaware incorporated chocolate manufacturer. Defendant Endurance American Insurance Company ("Endurance") is an insurer incorporated in Delaware. Defendant National Union Fire Insurance Company of Pittsburgh, PA. is a subsidiary of American International Group ("National Union"), incorporated in Pennsylvania. National Union is licensed to do business in Delaware. This insurance coverage

action arises from primary and excess insurance policies issued by Defendants[1] to Plaintiff.

## *The Insurance Policies*

Godiva purchased from Endurance a "Primary Management Liability Insurance for Private Companies" policy covering the period from June 30, 2018 through June 30, 2019 (the "Endurance Policy"). The Endurance Policy obligates Endurance to indemnify Godiva for Losses resulting from a Claim made against Godiva during the Policy Period for Wrongful Acts, including Directors and Officers ("D&O") Liability Coverage. The Endurance Policy provides a $10 million limit on liability. Godiva also purchased an excess policy through National Union that incorporates all of the same terms and conditions of the Endurance Policy and provides coverage for "Loss" (as defined in Endurance Policy) in excess of $10 million up to $20 million.

## *The Underlying Dispute*

Godiva's original storefront was located in Brussels, Belgium. Because of this connection to Belgium, Godiva's products exhibit the phrase "Belgium 1926." In early 2019, Adam Buxbaum and Steven Hesse sued Godiva, asserting that the "Belgium 1926" label on its products misled consumers. Buxbaum and Hesse

---

[1] Defendant Endurance National Union are collectively referred to as "Defendants."

alleged thirteen counts against Godiva for violations of New York and California consumer protection statutes, and common law. The suits were consolidated in the U.S. District Court for the Southern District of New York ("Class Action").

Godiva, Buxbaum, and Hesse engaged in mediation. Mediation resulted in a settlement that obligates Godiva to pay: (i) a maximum of $15 million in monetary relief; (ii) a maximum of $5 million in attorneys' fees; (iii) all settlement notice and administration costs; and (iv) up to $10,000 in class representative service awards (the "Settlement"). On September 23, 2021, a Settlement Agreement was executed, reflecting the terms of mediation. The Settlement Agreement is pending the final approval of the Judge for the Southern District of New York.

Endurance and National Union were notified of the Class Action and the Settlement Agreement, but declined to extend coverage to Godiva. Godiva seeks insurance coverage from Endurance and National Union for the Settlement and defense costs.

On October 13, 2022, Godiva brought this action, alleging breach of contract and breach of the implied covenant of good faith a fair dealing. Godiva also requests declaratory judgment confirming Defendants' obligations to indemnify Godiva under the policies. On December 22, 2021, Defendants jointly moved to dismiss Godiva's Complaint with prejudice. On February 25, 2022, Godiva filed a Cross-Motion for Partial Summary Judgment.

The main issue before this Court is whether Godiva has alleged facts which, if true, would establish that the Settlement Agreement amounts and defense costs in connection with the Class Action are covered by the Endurance and/or Excess Policies.

## STANDARD OF REVIEW

### *Motion to Dismiss*

A party may move to dismiss under this Court's Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In resolving a Rule 12(b)(6) motion, the standard is well settled: (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible to proof.[3]

The Court need not accept a plaintiff's "conclusory allegations unsupported by specific facts," or "draw unreasonable inferences in the plaintiff's favor."[4] Nor must the Court adopt "every strained interpretation of the allegations the plaintiff proposes. However, even with those cautions in mind, Delaware's pleading standard

---

[3] *Savor, Inc. v. FMR Corp.,* 812 A.2d 894, 896-97 (Del. 2002).
[4] *Windsor I, LLC v. CW Capital Asset Mgmt. LLC*, 238 A.2d 863, 871 (Del. 1968).

is "minimal" and "plaintiff friendly."[5] The operative test is one of reasonable conceivability, which asks whether there is a possibility of recovery.[6]

### *Summary Judgment*

Under Rule 56, "summary judgment should be entered when there is no dispute of material fact, and the moving party is entitled to judgment as a matter of law."[7] "The trial court shall examine the factual record and make reasonable inferences therefrom in the light most favorable to the nonmoving party to determine if there is any dispute of material fact."[8] Summary judgment should not be granted when the record indicates that there is a reasonable "material fact … in dispute."[9] The non-moving party "must set forth specific facts showing that there is a genuine issue for trial" in order to overcome a motion for summary judgment.[10]

When demonstrating a genuine issue of material facts, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading," but instead must "set forth specific facts showing that there is a genuine issue for trial."[11]

---

[5] *Tygon Peak Capital Mgmt, LLC v. Mobile Investco, LLC*, 2022 WL 34688, at *11 (Del. Ch.).
[6] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 1942).
[7] *Nash v. Connell*, 99 A.2d 242, 243 (Del. Ch. 1953).
[8] *Motorola, Inc. v. Amkor Tech., Inc.*, 849 A.2d 931, 935 (Del. 2004) (citing *Rhudy v. BottleCaps, Inc.*, 830 A.2d 402, 405 (Del. 2003)).
[9] *Burris v. Penn Mart Supermarkets, Inc.* 2006 WL 2329373, at *3 (Del. Super.)(citing *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69 (Del. 1962); *see also Cross v. Hair*, 258 A.2d 277, 279 (Del. 1969).
[10] *Carriere v. Peninsula Ins. Co.*, 810 A.2d 349, at *2 n.7 (Del. 2002)(citing Del. Super. Ct. Civ. R. 56(e)).
[11] *Id.*

Ultimately, unless there is a reasonable certainty that there is no triable issue, the Court has discretion to decline to decide the case in summary judgment and instead push the case to trial.[12]

To the extent genuine issues of material fact are not raised, the Court will treat the motions as cross-motions on the issues presented. Superior Court Rule 56(h) provides:

> Where the parties have filed cross motions for summary judgment and have not presented argument to the Court that there is an issue of fact material to the disposition of either motion, the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions.[13]

The Court will evaluate any contested facts pursuant to Rule 56(c). All facts are viewed in a light most favorable to the non-moving party.[14] The Court will evaluate the facts relating to each precise issue. The Court will take all reasonable inferences into consideration.

---

[12] *Cross*, 258 A.2d at 278.
[13] Super. Ct. Civ. R. 56.
[14] *Burkhart v. Davies*, 602 A.2d 56, 58–59 (Del. 1991).

7

## ANALYSIS

### *Parties' Requests for Relief*

Godiva has moved for partial summary judgement.  Godiva requests that the Court find:

1.  Delaware law applies to this D&O coverage dispute;
2.  Godiva's Settlement and Defense Costs come within the definition of insured "Loss;"
3.  Exclusion IV.B.6 ("matters uninsurable under the law") does not apply;
4.  Exclusion IV.A.12.e (anti-competitive conduct) does not apply; and
5.  Exclusion IV.B.2 ("fines and penalties") does not apply.

First, Godiva asserts that Endurance's choice-of-law analysis contradicts Delaware Supreme Court precedent set forth in *Certain Underwriters at Lloyds, London v. Chemtura Corporation*[15] and *RSUI Indemnity Company v. Murdock*.[16] Godiva relies on *Murdock*, arguing that Delaware law applies unless the "contacts in this particular instance are sufficient to tip the balance toward"[17] New York. Godiva further relies on *Chemtura,* arguing that contacts associated with the underlying claims in this action are irrelevant to the choice-of-law analysis.  Godiva asserts that the facts in this action support a finding that Delaware law applies to this claim.

---

[15] 160 A.3d 457 (Del. 2017).
[16] 248 A.3d 887 (Del. 2021).
[17] *Id*. at 901.

Next, Godiva contends that the Settlement Agreement and defense costs in the Underlying Action are covered losses under the terms of the Endurance Policy because: (1) insurance policies "should be interpreted as providing broad coverage to align with the insured's reasonable expectations;"[18] and (2) exclusions are "construed narrowly in favor of coverage."[19]

Godiva also asserts that Exclusion IV.B.6 does not apply. Godiva argues that Delaware law permits coverage for restitution and disgorgement. Therefore, Exclusion IV.B.6 (matters uninsurable under the law) cannot bar coverage for the Settlement Agreement. Godiva further asserts that the Settlement Agreement is not uninsurable disgorgement even if New York law applies because: (1) there has been no final, non-appealable judgment that Godiva's gains were "ill-gotten;" and (2) because the trial court in the underlying action could not possibly have awarded restitution or disgorgement had the case gone to trial.

Godiva further argues that Exclusion IV.A.12.e does not apply because it is an antitrust exclusion focused on violations of anti-competition statutes. Godiva contends that this antitrust exclusion bears no relation to the Underlying Action, which alleges improper advertising under consumer protection statutes and the common law.

---

[18] *Id.* at 906.
[19] *Ferrellgas Partners L.P. v. Zurich Am. Ins. Co.*, 2020 WL 363677, at *13 (Del. Super.).

Finally, Godiva asserts that Exclusion IV.B.2 (fines and penalties) bars coverage because: (1) the Settlement is not a "penalty;" (2) Godiva did not knowingly or willfully violate any law; and (3) there is no final judgment or admission establishing liability.

In response, Defendants Endurance and National Union have jointly moved to dismiss Godiva's complaint. Defendants request the following.

First, Endurance contends that contends that the *Chemtura* standard mandates that New York law applies.

Second, Endurance contends that Godiva has not satisfied it burden of proving the claim constitutes a "Loss" under the Insuring Agreements. Under the Insuring Agreement, "Loss" is defined, in pertinent part, as:

> The total amount the **Insureds** become legally obligated to pay on account of **Claims** made against them for **Wrongful Acts** for which coverage applies, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, any awards of prejudgment and post-judgment interest with respect to covered damages, settlements, **Defense Costs** and civil money penalties assessed against an **Insured** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. §78dd-2(g)(2)(B) or for a violation of any other federal, state, local or foreign law if such law violation is not knowing or willful.[21]

Third, Endurance asserts that the claim is excluded from coverage by Exclusion IV.A.12.e (unfair trade practices), which provides:

---

[21] Def. Ex. 4 Part 2 at p. 7.

A. The Insurer shall not be liable under the Coverage Section for **Loss** on account of that portion of any Claim made against any **Insured**:…

\*\*\*

12. solely with respect to Insuring Clause C:…

\*\*\*

e. based upon, arising out of or attributable to an actual or alleged violation of… any other federal, state, local, common or foreign laws involving… unfair trade practices…[22]

Fourth, Endurance claims that Exclusion IV.B.2 excludes coverage for fines or penalties imposed by law, provides that "**Loss** does not include…"

2. fines or penalties imposed by law, other than civil money penalties expressly referenced in the definition of Loss above,

\*\*\*

6. matters uninsurable under the law pursuant to which the Policy is construed, provided

Fifth, Endurance contends that Godiva's breach of the covenant of good faith and fair dealing and bad faith claims must be dismissed because:

(1) the claim for breach of the covenant of good faith and fair dealing is duplicative of the breach of contract claim because both claims are premised upon Endurance's denial of coverage for both the defense costs and settlement in the Underlying Lawsuit; and

(2) the bad faith claim fails to state a cause of action.

---

[22] Def. Endurance Op. Br. at 12 (emphasis in original).

11

National Union also asserts that Godiva's cross-motion for partial summary judgment should be denied. National Union has moved to join Endurance's Motion to Dismiss Count I (Breach of the Excess Policy) and Count II (Breach of the Implied Covenant of Good Faith and Fair Dealing) of Godiva's complaint, adding the additional reason that Godiva has not incurred any covered Loss reaching National Union's excess policy. National Union also asserts that the provisions of Godiva's policies foreclosing coverage are unambiguous. National Union argues that: (1) under the choice-of-law analysis, New York law applies; (2) under New York law, insurance of disgorgement or restitution for ill-gotten gains retained by the insured is prohibited; and (3) the policy language is unambiguous and precludes coverage for the Settlement in the underlying action.

### *Insurance Contract Interpretation*

In Delaware, it is well established that insurance policies are contracts.[23] Contract interpretation is a question of law.[24]

> The Court must give effect to the parties' mutual intent at the time of contracting. The Court should interpret contract language as it "would be understood by any objective, reasonable third party." Absent ambiguity, contract terms should be accorded their plain, ordinary meaning. Ambiguity exists when the disputed term "is fairly or reasonably susceptible to more than one meaning."[25]

---

[23] *Zurich Am. Ins. Co. v. Syngenta Crop Prot., LLC*, 2020 WL 5237318, at *4 (Del. Super.).
[24] *Id.*
[25] *Id.*

12

Generally, insurance policies are adhesion contracts that are not the result of arms-length negotiations.[26]  Therefore, the rules of construction "differ from those applied to most other contracts."[27]

> Where policy language is ambiguous, the doctrine of *contra proferentem* requires the Court to interpret the policy in favor of the insured because the insurer drafted the policy. The Court, pursuant to this doctrine, looks to "the reasonable expectations of the insured at the time when [the insured] entered the contract[.]" The Court will *only* apply this doctrine where the policy is ambiguous. When the policy language is "clear and unambiguous[,] a Delaware court will not destroy or twist the words under the guise of construing them" and each party "will be bound by its plain meaning."[28]

"The insured bears the burden of proving that a claim is covered by an insurance policy."[29]  Once coverage is found, the burden shifts to the insurer to prove an exclusion precludes coverage.[30]

### *Choice of Law*

The parties dispute whether Delaware law or New York law applies.

Defendants argue that New York has most significant relationship to this dispute.  Defendants assert that there is an actual conflict between the relevant laws,

---

[26] *Id.*

[27] *Id.* (internal citations omitted).

[28] *Id.*

[29] *Id*. at 5.

[30] *Id. See also Northrop Grumman Innovation Sys., Inc. v. Zurich Am. Ins. Co*., 2021 WL 347015, at *9 (Del. Super.).

warranting an analysis pursuant to (Restatement) Second Conflict of Laws Sections 193 and 188.[31] Defendants rely primarily on Section 193.

In *Chemtura,* the Delaware Supreme Court, explains that the Restatement §193 "provides a presumption for insurance contracts, that, as a general matter, the law of the state 'which the parties understood was to be the principal location of the insured risk' should be applied because that state will typically have the most significant relationship."[32] Defendants further rely on the five factors in Section 188 to determine which state has the most significant relationship:

a) the place of contracting,
b) the place of negotiation of the contract,
c) the place of performance,
d) the location of the subject matter of the contract, and
e) the domicile, residence, nationality, place of incorporation and place of business of the parties[33]

Specifically, Defendants argue:

i. The place of contracting is New York;
ii. The corporate representatives responsible for negotiating and approving the Endurance Policy were either located in or required approval from New York employees;
iii. The Endurance Policy was negotiated in New York;
iv. The Endurance Policy states it was executed and issued in New York;
v. Godiva's world headquarters is in New York and the Underlying litigation involves decisions made by employees working at headquarters;

---

[31] Restatement (Second) of Conflict of Laws §§ 188, 193 (1971).
[32] *Chemtura*, 160 A.3d at 465 (citing Rest. (Second) of Conflict of Laws at § 193).
[33]*Id*.

vi.    The Endurance Policy specifically provides that all notices are to be sent to Endurance's New York offices, such that Endurance receives, processes, and adjusts its claims in New York;

vii.    Godiva is currently seeking a declaratory judgment that Endurance must provide coverage for the Underlying Lawsuit, venued in the Southern District of New York; and

viii.    The principal place of business for both Godiva and Endurance is New York;

Goliva contends that Delaware has the most significant relationship to this dispute. Plaintiff primarily argues that Section 193 does not apply. Plaintiff relies on *Murdock*, in which the Delaware Court of Delaware opined:

> [W]e also recognized that, if the facts of a case don't fit the *Second Restatement*'s presumptions—such as when the insurance contract is part of a comprehensive program insuring risks that are not confined to a single jurisdiction—we must look at 'broader subject-matter-specific factors' that bear on the significance of the different states' relationship to the contract.[34]

Godiva argues that the Court should look to the broader factors in Section 188 because: (1) the parties did not make an "effective choice of law through their contract" because the Policies do not contain a choice of law provision; (2) there is no actual conflict between Delaware and New York law; and (3) Delaware has the most significant relationship to the dispute. Godiva cites the following Delaware contacts:

i.    Godiva and Endurance are both incorporated in Delaware; and

ii.    The Policies in this action provide Directors and Officers Liability Coverage—which was issued to Godiva's office in Wilmington, Delaware.

---

[34] *Murdock*, 248 A.3d 887, at 896 (quoting *Chemtura* 160 A.3d at 465).

Godiva further reasons that there are multiple contacts throughout various states.

Originally, in January 2019, the Underlying Action was brought in California and New York.[35] Subsequently, the California action was voluntarily dismissed and consolidated into an action brought in the Southern District of New York.[36] The Underlying Action remains in the New York District Court.

The Court finds the reasoning in *Mills Limited Partnership v. Liberty Mutual Insurance Company* persuasive. "In a case like this, where the insured risk is the conduct of directors and officers located in states throughout the world, Comment *b* and § 193 itself, are less pertinent than § 188."[37] Section 193 does not rigidly apply to determine choice of law in the context of a complex multistate insurance program.[38] The Court finds that this litigation could have been brought in

---

[35] National Union Br. at 6. ("On January 31, 2019, two putative class actions were filed against Godiva: *Hesse v. Godiva Chocolatier, Inc.*, No. 1:19-cv-00972- AJN in the Southern District of New York, and (2) *Buxbaum v. Godiva Chocolatier, Inc.*, No. 3:19-cv-00558-DMR, in the Northern District of California.").

[36] *Id.*

[37] *Mills Ltd. P'ship v. Liberty Mut. Ins. Co.,* 2010 WL 8250837, at *5 (Del. Super.). *See* Restatement (Second) of Conflict of Laws § 188 cmt. B ("An insured risk, namely the object or activity which is the subject matter of the insurance, has its principal location, in the sense here used, in the state where it will be during at least the major portion of the insurance period…. And where the honesty and fidelity of a particular person is the subject of the insurance, the parties will usually know beforehand where he will spend most of his time during the life of the policy…. The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state. Situations where this cannot be done, and where the location of the risk has less significance, include (1) where the insured object will be more or less constantly on the move from state to state during the term of the policy and (2) where the policy covers a group of risks that are scattered throughout two or more states.")

[38] *Chemtura Corp.*, 160 A.3d at 466.

numerous jurisdictions, therefore the "significant contacts" factor cannot be determinative.

It is well established that Delaware law generally applies to directors and officers ("D&O") coverage. "[I]n the vast majority of cases, Delaware law governs the duties of the directors and officers of Delaware corporation[s] to the corporation, its stockholders, and its investors."[40] "When the insured risk is the directors' and officers' 'honesty and fidelity' to the corporation, and the choice of law is between headquarters or the state of incorporation, the state of incorporation has the most significant relationship."[41] Delaware law applies to D&O coverage where the state of incorporation is centrally-implicated. Delaware courts consistently have found that Delaware law applies to insurance coverage disputes regarding D&O policies where the insured companies are Delaware corporations.[42]

The dispute in *Chemtura* involved insured risk in operations around the world, obviously in multiple jurisdictions. The *Chemtura* Court conducted a three-part analysis: (1) determining if the parties made an effective choice of law through their contract; (2) if not, determining if there is an actual conflict between the laws of the different states each party urges should apply; and (3) if so, analyzing which state

---

[40] *Murdock*, 248 A.3d at 900–01.
[41] *Mills*, 2010 WL 8250837, at *6.
[42] *Ferrellgas*, 2020 WL 363677, at *4.

has the most significant relationship.[43]  If there is no agreed central location for the dispute, the Court must look at other factors to determine the center of gravity.[44]  In the context of an insurance contract, the Court considers the expectations of the parties in the contract dispute and the insurance contract itself, not the underlying litigation.[45]  The Court also looks to the factors set forth in Section 188 of the Restatement.  Section 188 factors are meant to be considered in conjunction with the factors set forth in Section 6.[46]

*Liggett Group Incorporated v. Affiliated LM Insurance Company*[47] also involved an insurance dispute affecting consumers nationwide.  This Court recognized that where nationwide liability claims are involved, there is no single principal location of the risks.[48]  When evaluating the dispute, the Court has held that "the most significant factor for conflict of laws analysis in a complex insurance case with multiple insurers and multiple risks is the principal place of business of the

---

[43] *Chemtura,* 160 A.3d 457, at 464.

[44] *Id.* at 466.

[45] *Id.* at 467 ("In analyzing the contacts relevant to determining the most significant relationship, we focus on the reality that this is a contract dispute and that the important purpose of fulfilling the justified expectations of the parties in contract disputes is best served by providing terms in the contract with a meaning that does not vary based on the happenstance of the locations of a particular claim.").

[46] *Id.* at 468. *See Rest. (Second) Conflict of Laws* §6 ((a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.).

[47] 788 A.2d 134  (Del. Super. 2001).

[48] *Id.* at 138.

insured because it is 'the situs which link[s] all the parties together.'"[49]  Although this Court found that North Carolina had the most significant relationship to the transaction, no party argued that Delaware law should apply to the case.

Defendants argue that this action is not a traditional D&O insurance coverage dispute.  Endurance alleges that the Endurance Policy is not a public company D&O policy, rather it is a private company management liability policy.  Endurance attempts to distinguish *Murdock* from this action, arguing that *Murdock* pertains to claims against individual directors and officers for breach of their fiduciary duties resulting in harm to corporate shareholders, whereas the consumer fraud claims against Godiva originated from Godiva's New York headquarters to impact consumers throughout the nation.  National Union asserts that the Underlying Action does not include any allegations of an individual director's or officer's wrongdoing, or breach of fiduciary duty owed to a Delaware corporation.

The choice-of-law analysis in this instant action impacts two issues: disgorgement; and bad faith.

---

[49] *Id.* (internal citations omitted).

## Disgorgement/Restitution

Disgorgement is defined as "the act of giving up something (such as illegally obtained profits) on demand or by legal compulsion."[51]  New York courts opine that the purpose of disgorgement is "to deprive a party of ill-gotten gains and to deter improper conduct."[52]

Restitution occurs where a party is "restored to the position, he formerly occupied either by the return of something which he formerly had or by the receipt of its equivalent in money. Ordinarily, the measure of restitution is the amount of enrichment received…."[53]  "A person who has been unjustly enriched at the expense of another is required to make restitution to the other."[54]  In order for the Court to order restitution, the Court must find that the Defendants were unjustly enriched.[55]

Under Delaware law, disgorgement may be insurable if permitted by statute. Losses are uninsurable as against public policy only if the legislature so provides.[56] Public policy is the domain of the General Assembly.[57]  This Court has declined to

---

[51] *TIAA-CREF Individual & Institutional Servs., LLC v. Illinois Nat'l Ins. Co.*, 2016 WL 6534271, at *10 (Del. Super.)(internal citations omitted).
[52] *Id.* at *10 (quoting *Vigilant Ins. Co. v. Credit Suisse First Boston Corp.*, 2003 WL 24009803, at *4 (N.Y. Sup. Ct.).
[53] Restatement (First) of Restitution § 1 (1937).
[54] Restatement (First) of Restitution § 1 (1937).
[55] *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999).
[56] *Sycamore Partners Mgmt., L.P. v. Endurance Am. Ins. Co.*, 2021 WL 761639, at *11 (Del. Super.).
[57] *Id. See also Murdock,* 248 A.3d 887, at 905 ("[I]n the absence of clear guidance from the General Assembly to the contrary, we must reject RSUI's invitation to void its contractual obligations on public-policy grounds.).

legislate from the bench by applying "judicially fashioned policy limitations."[58]

Thus, "the Court will not hold that restitution or disgorgement is uninsurable as a matter of Delaware public policy unless a Delaware statute commands it to do so."[59] The parties have not identified any Delaware case law or Delaware statute articulating public policy regarding insurability of disgorgement.

Under New York law, disgorgement is not insurable if it results in ill-gotten gains retained by the insured.[60] It is well established in New York that "one may not insure against the risk of being ordered to return money or property that has been wrongfully acquired. Such orders do not award 'damages' as that term is used in insurance policies."[61] In *Reliance Group Holdings, Incorporated v. National Union Fire Insurance Company of Pittsburgh, PA,* the Appellate Division for the New York Supreme Court reasoned that "the D & O policy covers corporate indemnification of directors and officers for *their* incurred liability, not the corporation's own liability."[62]

Defendants rely on *J.P. Morgan Securities Incorporated v. Vigilant Insurance Company*, where the New York Court of Appeals held that the "policy rationale for

---

[58] *Id*.

[59] *Id*.

[60] *Vigilant Ins. Co. v. Credit Suisse First Boston Corp.,* 782 N.Y.S.2d 19, 20 (App. Div. 2004).

[61] *Reliance Grp. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*., 594 N.Y.S.2d 20, 24 N.Y. (N.Y. App. Div. 1993)(quoting *Bank of the W. v. Superior Court,* 833 P.2d 545, 553 (Cal. 1992)).

[62] *Id.* at *56 (emphasis in original).

precluding indemnity for disgorgement" is to prevent the "unjust enrichment of the insured by allowing it to, in effect, retain the ill-gotten gains by transferring the loss to its carrier."[63]  However, the *J.P. Morgan* Court used this rationale to distinguish cases relied upon by the insurers where the "insured was barred from obtaining coverage for SEC-ordered disgorgement because the SEC's findings 'conclusively link[ed]' the disgorgement payment to improperly acquired funds in the hands of the insured."[64]  *J.P. Morgan* involved regulatory proceedings for actions that resulted in "ill-gotten gains" and "improperly acquired funds."

The *J.P. Morgan* dispute arose from the monetary settlement of an SEC proceeding and related litigation predicted on violation of federal securities laws. The *J.P. Morgan* insured settled and agreed to pay separate amounts specified as "disgorgement" and "civil penalty."  The insured sought indemnification from insurers, conceding that it is "reasonable to preclude an insured from obtaining indemnity for the disgorgement of its own ill-gotten gains."  The insured argued that a portion of the disgorgement was not unjust enrichment because the portion was attributable to the profits of its customers.

In *In re TIAA-CREF Insurance Appeals,*[65] the Delaware Supreme Court held:

> The New York cases upon which [the insurers] principally rely involve
> regulatory proceedings which resulted in settlements ordering the

---

[63] *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.,* 992 N.E.2d 1076, 1083 (N.Y. 2013).
[64] *Id.*
[65] 192 A.3d 554 (Del. 2018)(internal citations omitted).

insured to pay disgorgement damages. It appears that the principle which emerges from these cases is that New York public policy prohibits enforcement of insurance agreements in cases involving disgorgement where the payment is conclusively linked, in some fashion, to improperly acquired funds in the hands of the insured. In this case, TIAA disputed and defended itself against the claims asserted in the class actions, repeatedly asserting that the procedures that resulted in TFE and its treatment were proper and lawful. No finding that the TFE was ill-gotten gain was made in any forum. Nor could one have been…. Under these circumstances, we conclude that the Superior Court was correct in distinguishing the New York cases barring insurability, which proscribe it in situations in which the insured's wrongdoing resulted in ill-gotten gains, and finding that TIAA established that New York's public policy against enforcing insurance agreements in cases of disgorgement does not apply to the facts of this case.[66]

The Settlement Agreement in the Underlying Action does not reference the terms "disgorgement" or "restitution." Additionally, in the Settlement Agreement, Godiva explicitly "continu[es] to deny all allegations of wrong-doing," "disclaim[s] all liability with respect to all claims," and settles "without any admission or concession of liability or wrongdoing or the lack of merit of any defense whatsoever by Godiva."[67] There has been no order of disgorgement, no admission of wrongdoing, and no gain for personal profit or remuneration. Essentially, the Settlement Agreement represents the approximate difference in value, that is, the value of the product (if properly advertised) versus the value of the product as falsely advertised.

---

[66] *In re TIAA-CREF Ins. Appeals*, 2018 WL 3620873, at *2 (Del.).
[67] Pl's Ex. E ¶¶ 17-18.

23

The Court finds that the Settlement Agreement in the Underlying Action does not involve disgorgement. Therefore, the Court need not resolve any choice-of-law conflict between New York and Delaware law on this issue.

Bad Faith

New York and Delaware laws differ as they pertain to bad faith claims.

Defendants rely on *Fishberg v. State Farm Fire and Casualty Company*, arguing that New York does not recognize an independent cause of action for bad faith denial of insurance coverage.[68] Defendants further assert that Godiva's claim is duplicative of its breach of contract claim because both claims are premised upon Endurance's denial of coverage for Defense Costs and the Settlement in the Underlying Lawsuit.

Godiva contends that Defendants misapply *Fishberg*. Godiva argues that the full proposition recognized in *Fishberg* is that "*except in cases where an insurance company refuses to defend or settle a claim brought by a third party against an insured*, 'New York law does not recognize an independent cause of action for bad faith denial of insurance coverage.'"[69] Godiva asserts that *Fishberg* actually *refused to dismiss* an insured's *separate cause of action* for bad faith. Godiva further argues that the bad faith cause of action in this instant litigation should survive under New

---

[68] 2021 WL 3077478, at *3 (S.D.N.Y.)
[69] *Id.* (quoting *Vitrano v. State Farm Ins. Co.*, 2008 WL 2696156, at *3 (S.D.N.Y.))(emphasis added).

24

York law because Defendants refused to defend or settle class action lawsuits brought by third parties against Godiva.

"New York law ... does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."[70] However, "New York courts do recognize that an insurance company's handling of a claim can give rise to a breach of the duty of good faith and fair dealing."[71]

Godiva contends that its bad faith claim is not entirely duplicative. Godiva argues the claim could be plead independently even in New York because it includes factual allegations of bad faith that are separate and distinct from its breach of contract claim. Godiva provides one example in the Complaint where Godiva alleged that "Endurance violated its good-faith obligations by unreasonably denying defense cost reimbursement after Endurance acknowledged defense costs coverage."[72]

Defendants argue that the claim also must be dismissed under Delaware law. Defendants rely on *Dunlap v. State Farm Fire & Casualty Company*, where the Delaware Supreme Court found that "the implied covenant requires 'a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has

---

[70] *Id.* (internal quotations omitted).
[71] *Id.*
[72] Compl. at ¶ 44.

25

the effect of preventing the other party to the contract from receiving the fruits of the bargain."[73]  Defendants primarily assert that: (1) Godiva's Complaint never alleges that Endurance exercised any measure of control over the underlying litigation; and (2) the Complaint makes no mention of conduct amounting to gross disregard on the part of Endurance, let alone a pattern of behavior.

Godiva contends that there is no conflict between Delaware and New York law, therefore Delaware law should apply.  Godiva provides minimal citations to the record or judicial authority in response to Defendant's arguments.

The Court finds that Godiva has failed to present facts supporting a separate and distinct cause of action for bad faith.  Therefore, the Court finds that Godiva has failed to establish a *prima facie* case for bad faith failure to settle.  Thus, it is irrelevant whether New York or Delaware law applies.

***"Loss"***

Under the Endurance Policy, "Loss," is defined to mean:

> The total amount the **Insureds** become legally obligated to pay on account of **Claims** made against them for **Wrongful Acts** for which coverage applies, including, but not limited to, damages (including punitive, exemplary or multiple damages), judgments, any awards of prejudgment and post-judgment interest with respect to covered damages, settlements, **Defense Costs** and civil money penalties assessed against an **Insured** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. §78dd-2(g)(2)(B) or for a violation of any other federal, state, local or foreign law if such law violation is not knowing or willful.

---

[73] 878 A.2d 434, 442 (Del. 2005).

The Endurance Policy defines "Wrongful Act" to mean:

1. any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any of the **Insured Person**s in their capacity as such. Or in an **Outside Position**, or with respect to Insuring Agreement C, by the **Company**, or

2. any matter claimed against the **Insured Persons** solely by reason of their serving in such capacity or in an **Outside Position.**

Defendants argue that Godiva did not allege facts sufficient to show that Godiva's action were not knowing and willful.

Godiva argues that coverage broadly encompasses both intentional and unintentional conduct. Godiva primarily relies on *Charter Twp. of Shelby v. Argonaut Insurance Company*, where the Michigan Court of Appeals held: "To contend…that the alleged wrongful acts are not covered under the policy because the claimants alleged 'knowing, intentional, and purposeful acts' that do not constitute 'negligence, mistake or error' is misplaced, as the policy does not limit the definition of wrongful acts to acts performed negligently or mistakenly." [76] In *Charter*, the policy's definition of "wrongful act" included policy language that states, in pertinent part "*any* act, error or omission flowing from or originating out of [the activity]."

---

[76] 2015 WL 9392727, at *8 (Mich. Ct. App.). *See also Amos ex rel. Amos v. Campbell,* 593 N.W.2d 263, 266 (Minn. Ct. App. 1999)("The term 'wrongful act' has ordinarily been understood to encompass intentional as well as negligent misconduct.").

Godiva further contends that the "knowing or willful" language is inapplicable here because the case does not involve civil money penalties. Alternatively, Godiva argues that the civil money penalty is still an insurable "Loss" unless Defendants prove "knowing" or "willful" violation of false advertising laws.

To avoid coverage with regard to civil money penalties, there needs to be some evidence or admission that the violation of law was knowing or willful. Defendants have failed to present such evidence. The Endurance Policy language provides broad coverage. It covers settlement and many types of damages. The Court finds that the Settlement Agreement is a covered loss within the meaning of the term "Loss" as explicitly defined to include settlements in the Policy.

### *Exclusion IV.A.12.e (Unfair Trade Practices)*

Exclusions IV.A.12.e—the Antitrust Exclusion—excludes claims

> based upon, arising out of or attributable to an actual or alleged violation of the Sherman Anti-Trust Act, the Clayton Act or the Federal Trade Commission Act, as amended, or any other federal, state, local, common or foreign laws involving anti-trust, monopoly, price fixing, price discrimination, predatory pricing, restraint of trade, *unfair trade practices* or tortious interference with another's actual or prospective business or contractual relationships or opportunities[77]

The issue is whether "unfair trade practices" includes consumer protection and false advertising. "Unfair trade practices" is not defined. No authority has been presented by either party specifically resolving this issue. Generally, consumer

---

[77] Pl.'s Ex. A p. 23 (emphasis added).

28

protection involves violations of statutes, regulations, and common law standards. The Endurance Policy does not explicitly exclude consumer protection actions from coverage.

Plaintiff relies on *James River Insurance Company v. Rawlings Sporting Goods Company, Incorporated*, where the United States District Court for the Central District of California found that "other than the ambiguous term 'unfair trade practices,' all of the excluding conduct identified in the Anti-Trust Exclusion refer[s] to anti-competitive *business* practices and not to any conduct directed at consumers."[78] The *Rawlings* court reasoned that the "Anti-Trust Exclusion similarly fails to mention anything – other than "unfair trade practices" – that would suggest consumer protection claims. The Court stated that it would be odd to include a consumer-protection component in an exclusion titled "Anti-Trust Exclusion" without mentioning words such as "fraud" or "misrepresentation'" or "consumer protection."[79]

Defendants assert that the remaining counts in the Underlying Litigation fundamentally establish a consumer fraud case. The underlying complaint alleges "misleading, false, unfair, and fraudulent" trade practices.[82] Essentially, the

---

[78] 2021 WL 346418, at *7 (C.D. Cal.).
[79] *Id.*
[82] Pl's Ex. C ¶¶ 13, 14, 37, 54.

29

underlying complaint alleges that the product is mis-labeled—which Defendants assert is deceptive— resulting in what Defendants characterize as "ill-gotten gains."

The Court questions whether unfair trade practices are the equivalent of consumer fraud. Defendant insurers have presented no authority demonstrating that these terms are interchangeable or legally equivalent.

Godiva argues that this litigation really involves statutory violations of consumer protection laws which do not trigger an exclusion. The alleged statutory violations are not classified as anti-competition or unfair trade practices. Godiva asserts that Exclusion IV.A.12.e is an Antitrust Exclusion focused on violation of anti-competition statute, which bears no relation to the Underlying Class Action—which Godiva asserts is consumer protection based. Godiva further asserts that Exclusion IV.A.12.e is not an Unfair Trade Practices Exclusion as Defendants contend.

The Court finds that the Settlement Agreement does not contain language specifically stating that the agreed "monetary relief" is for unfair trade practices. The Court has found that the broad definition of Loss results in a finding that the Settlement is covered. To the extent that some of the underlying statutory and regulatory allegations reasonably can be interpreted as relating to or governing unfair trade practices, it is possible that some the Settlement could be allocated to amounts subject to Exclusion IV.A.12.e. Endorsement One allocates costs for both

30

covered and non-covered claims. The Court finds that this Exclusion does not apply to prevent coverage of the entire Settlement.

### *Exclusion IV.B.2 (Fines or Penalties)*

Exclusion IV.B.2 (fines or penalties) provides that "Loss" does not include "fines or penalties imposed by law, other than civil money penalties expressly referenced in the definition of Loss above…."

Defendants assert that Exclusion IV.B.2 applies to exclude coverage because the Settlement constitutes "fines or penalties imposed by law," which are not covered. However, Endurance conceded at oral argument that a genuine issue of material fact exists about whether the *entire* Settlement constitutes "penalties." Endurance suggests that discovery is necessary to determine the portion of Settlement attributable to penalties.

Godiva contends that the Underlying Action alleges violations of state law as referenced in the definition of covered Loss. Godiva argues that the Settlement can only constitute a penalty if Defendants prove: (1) the Settlement actually constitutes a "penalty;" (2) Godiva committed a knowing or willful violation of state law, and (3) such willful violation of law has been established by a final and non-appealable judgment in the underlying Class Action or by a written admission under oath— pursuant to Exclusion IV.A.6.

Godiva asserts that Exclusion IV.B.2 does not apply because the Settlement Agreement is not a penalty. Godiva relies on *Delaware Bay Surgical Services, P.A. v. Swier,* where the Delaware Supreme Court defined "penalty" as "a sum inserted into a contract that serves as a punishment for default, rather than a measure of compensation for its breach. In other words, it is an agreement to pay a stipulated sum upon breach, irrespective of the damage sustained."[86]

The Settlement Agreement uses the term "monetary relief," not "damages," "penalties," or "restitution." The Settlement Agreement does not specifically state that relief is for "civil money penalties assessed." Defendants conceded at oral argument that not all statutes and regulations in the underlying complaint involved "penalties."

In the Settlement Agreement, Godiva did not acknowledge any knowing or willful violation of law. Godiva alleges that the Settlement Agreement represents the approximate difference between the price of the falsely-advertised product as sold, and the value of the product if there had been no false advertising. Godiva alleges that this amount is compensatory in nature, not punitive.

Exclusion IV.A.6 provides:

> The Insurer shall not be liable under this Coverage Section for Loss on account of that portion of any **Claim** made against any **Insured** … based upon, arising out of, or attributable to such **Insured** having

---

[86]900 A.2d 646, 650 (Del. 2006).

gained any personal profit or remuneration to which such **Insured** was not legally entitled or having committed any deliberate fraud or willful violation of law, if a final and non-appealable judgment or adjudication adverse to such **Insured** in any proceeding not brought by the Insurer, or if a written admission under oath by such **Insured**, establishes that such **Insured** in fact gained any such personal profit or remuneration or committed such deliberate fraud or willful violation of law….

Godiva argues that there has been no final, non-appealable judgment or admission establishing a willful violation of law. Godiva relies on *Gallup, Incorporated v. Greenwich Insurance Company*.[88] The *Gallup* plaintiff argued that a fraud/ill-gotten gains exclusions—which required final adjudication—did not apply because the settlement was not a final adjudication. The *Gallup* contract contained a similar exclusion to the Exclusion at issue in his case.[89] This Court found that:

> this provision shows that Defendant contemplated coverage for restitution and specifically decided that reimbursement for restitution would only be precluded upon a final adjudication that the money Plaintiff received was actually restitution. As the drafter of the Policy, Defendant could have precluded coverage of all settlements but it did not. Instead, Defendant drafted the Policy to explicitly include "settlements" under the definition of "Loss" subject to the Policy's other exclusions.

---

[88] 2015 WL 1201518 (Del. Super.).

[89] *Id.* at *2. (The *Gallup* exclusions provides: "The Insurer shall not be liable to make any payment for **Loss**, and shall have no duty to defend or pay **Defense Expenses**, in connection with any **Claim** made against an **Insured**:
(A) brought about or contributed to in fact by any:
 (1) intentionally dishonest, fraudulent or criminal act or omission or any willful violation of any statute, rule or law; or
 (2) profit or remunerations gained by any **Insured** to which such **Insured** is not legally entitled;
as determined by a final adjudication in the underlying action or in a separate action or proceeding ('Fraud/Ill–Gotten Gains Exclusion')").

Additionally, because Defendant drafted the Fraud/Ill–Gotten Gains Exclusion to require a final adjudication and Defendant has not received a final adjudication that the Settlement is for restitution, the Court need not decide whether or not public policy prevents reimbursement. If the Court were to find that the Settlement is not for restitution then the Settlement is covered under the definition of "Loss" under the terms of the Policy. Alternatively, if the Court were to find that the Settlement is for restitution, the Fraud/Ill–Gotten Gains Exclusion requires that there be a "final adjudication in the underlying action or in a separate action or proceeding." [90]

The Court finds that the Settlement Agreement is not for "fines or penalties imposed by law." Some portion of the Settlement may amount to "civil money penalties," which are explicitly omitted from Exclusion IV.B.2. Therefore, the Court finds that Exclusion IV.B.2 does not apply to prevent coverage of the entire Settlement.

### *Implied Covenant of Good Faith and Fair Dealing*

The implied covenant of good faith and fair dealing is inherent in all contracts. The purpose of the implied covenant of good faith and fair dealing is to fill unanticipated contractual gaps.[91] The doctrine "operates only in that narrow band of cases where the contract as a whole speaks sufficiently to suggest an obligation and point to a result, but does not speak directly enough to provide an explicit answer."[92] "Generally, a plaintiff cannot base a claim for breach of the implied covenant on

---

[90] *Id.* at *10.
[91] *Buck v. Viking Holding Mgmt. Co. LLC*, 2021 WL 673459, at *5 (Del. Super.).
[92] *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146 (Del. Ch. 2009).

conduct authorized by the terms of the agreement."[93]   The implied covenant is properly used to fill gaps only when a contract truly is silent on the disputed issue.[94]

> Merely repeating the defendant's allegedly improper acts or omissions already the subject of a separate breach of contract claim is insufficient to support a claim for breach of the implied covenant of good faith and fair dealing. Where the contract specifically addresses the alleged misconduct, its terms will be applied, and an implied covenant claim will not stand.  There cannot be a separate implied covenant claim involving the same conduct as the breach of contract claim.[95]

Godiva's claim for breach of the covenant of good faith and fair dealing is premised on the denial of coverage.  Godiva alleged that "Endurance violated its good-faith obligations by unreasonably denying defense cost reimbursement after Endurance acknowledged defense costs coverage."  Godiva concedes that some of the allegations are duplicative of its breach of contract claim.

The Court finds that the contract covers the subject matter at issue.  Therefore, Godiva's claim for breach of the implied covenant of good faith and fair dealing must be dismissed.

## **CONCLUSION**

The Court finds that the Settlement is not disgorgement, therefore the Court need not conduct a choice-of-law analysis between New York and Delaware law.

---

[93]*Trumbull Radiologists, Inc. v. Premier Imaging Tri Holdings LLC*, 2021 WL 5577249, at *5 (Del. Super.) (citing *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005)).
[94] *Buck,* 2021 WL 673459, at *5.
[95] *Trumbull*, 2021 WL 5577249, at *6.

Because the Settlement is not for a matter uninsurable as a matter of Delaware or New York law, Exclusion IV.B.6 (matters uninsurable under the law) cannot bar coverage.

The Court finds that Godiva has failed to present facts supporting a separate and distinct cause of action for bad faith. Therefore, the Court finds that Godiva has failed to establish a *prima facie* case for bad faith failure to settle, and that claim is hereby dismissed.

The Court finds that the Settlement Agreement is a covered loss within the meaning of the term "Loss" as explicitly defined to include settlements in the Policy.

The Court finds that Exclusion IV.A.12.e does not apply to prevent coverage of the entire Settlement. To the extent that some of the underlying statutory and regulatory allegations reasonably can be interpreted as relating to or governing unfair trade practices, it is possible that some the Settlement could be allocated as costs for both covered and non-covered claims.

The Court finds that the settlement is not for "fines or penalties imposed by law." Some portion of the Settlement may amount to "civil money penalties," which are explicitly omitted from Exclusion IV.B.2. Therefore, the Court finds that Exclusion IV.B.2 does not apply to prevent coverage of the entire Settlement.

The Court finds that the contract covers the subject matter at issue.  Therefore, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is dismissed.

**THEREFORE**, Defendants' Motions to Dismiss are hereby **GRANTED IN PART and DENIED IN PART.**  The Parties' Cross-Motions for Partial Summary Judgement are hereby **GRANTED IN PART and DENIED IN PART.**

**IT IS SO ORDERED.**

*/s/ Mary M. Johnston*

The Honorable Mary M. Johnston
